TOSCO CORPORATION,
Plaintiff-Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellant.

No. 82–5579.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1983.

Decided Dec. 23, 1983.

Henry Haile, Nashville, Tenn., Ellis A. Sharp (argued), Knoxville, Tenn., Morton, Lewis, King & Krieg, Nashville, Tenn., for defendant-appellant.

Jay S. Bowen (argued), Bass, Berry & Sims, Nashville, Tenn., for plaintiff-appellee.

Before ENGEL and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This appeal involves a judgment of $108,-852.27 plus interest rendered against the United Southern Bank of Clarksville, Clarksville, Tennessee (Bank of Clarksville) for the wrongful dishonor of a draft under a letter of credit. Jurisdiction was based upon diversity of citizenship. The Bank appealed.

On August 26, 1983, several months after the filing of the Bank's notice of appeal, the Bank was declared insolvent and was closed by the Tennessee Commissioner of Financial Institutions. The Federal Deposit Insurance Corporation (FDIC) was appointed receiver. Pursuant to Fed.R.App.P. 43 the FDIC moved this Court for an order substituting it as defendant-appellant in the place of the Bank, with appropriate substitution of Counsel. On October 5, 1983, this Court entered an order granting the motion substituting the FDIC, receiver, as the defendant-appellant. The oral argument of Appellant in this Court was made by counsel for the FDIC.

For the reasons set forth in this opinion, we affirm the judgment of the district

court, except for a small modification in the amount of interest adjudged against the Appellant.

## I.

This action was brought by Tosco Corporation (Tosco) against Lankford Oil Company for sums due on an open account, and against the United Southern Bank of Clarksville for the wrongful dishonor of a draft drawn under a letter of credit issued by its Vice-President and Cashier in favor of Tosco. James and Betty Lankford originally were named defendants, but were dismissed before trial.

The parties waived a jury trial and entered into lengthy stipulations. The case was tried before District Judge Thomas A. Wiseman, Jr. on June 21 and 22, 1982. On July 7, 1982 Judge Wiseman issued comprehensive findings of fact and conclusions of law and entered judgment against the Bank of Clarksville and Lankford Oil jointly and severally, for $108,852.27, plus prejudgment interest at the rate of 10% from May 8, 1981. Judgment also was entered in favor of the Bank against Lankford Oil on its cross-claim for the same amount. On September 9, 1982, the district court denied the Bank's motion for a new trial, and the Bank filed a notice of appeal on September 16, 1982. Lankford Oil did not appeal.

## II.

Tosca is a Nevada corporation engaged in the sale and distribution of petroleum products. It maintains a credit department in Arkansas which manages all its credit operations east of the Mississippi River. Lankford Oil, a Tennessee corporation, is engaged in the purchase of petroleum products used in its primary business of operating gasoline and service stations in the Clarksville, Tennessee area.

The relationship between Lankford Oil and Tosco began in 1971, when Lankford began purchasing petroleum products from Tosco. In 1976, Lankford switched from buying gasoline from Tosco on consignment as a "jobber" to being supplied pursuant to a line of credit.

Judge Wiseman, *inter alia,* made the following findings of fact which we find to be supported by the record and accordingly adopt:

4. In 1978, Tosco began to experience delinquencies in connection with the Lankford Corporation account and several checks were returned for insufficient funds. Following these problems, Tosco stopped selling gasoline to Lankford Corporation on open account and put it on a cashier's check basis pursuant to which it was sold gasoline only when it was paid for by a cashier's check at the time of sale.

5. In 1979, Lankford Corporation requested Tosco to put it back on open account.

6. Tosco agreed to reopen the account, provided that Lankford Corporation supply to Tosco a letter of credit in the amount of $95,000 in Tosco's favor. William T. Little, Tosco's credit and collection manager for the eastern region of the United States, instructed another Tosco employee, Christine Parker, to inform James Lankford that the open account would be reopened upon the issuance to Tosco of the letter of credit.

7. Christine Parker telephoned James Lankford and informed him that the open account would be reopened upon issuance to Tosco of a letter of credit in the amount of $95,000 for at least six months' duration. She did not specify from which financial institution the letter must come, nor did she suggest or supply a form that the letter of credit must take.

8. Lankford Corporation's account with Tosco at this time was paid up and, in fact, there was a credit balance in Lankford's favor of $5,772.

9. Thereafter, Tosco received by mail, without any accompanying cover letter, a document labeled "irrevocable letter of credit Number 105" dated September 25, 1979 on Bank of Clarksville stationery. The document was executed "Bank of Clarksville by /s/ *Ken Atkins,* Ken Atkins, Vice President and Cashier". The

letter of credit provided that it "shall terminate on June 1, 1980."

10. Little, upon receipt of the letter of credit, reviewed its form and the signature and title of the person signing. It is Tosco's practice to review the form to see if it is satisfactory and to examine the signature to see if it is signed by a proper official. Perceiving no apparent problem with the signature, the amount or term of the letter of credit, Little did not call the Bank of Clarksville. Had there been, however, this practice dictated that such a call would be made.

11. Little, at time of the presentation of the letter of credit, had been credit manager for approximately twelve years and prior to that had worked for six years as an auditor for Tosco. He relied upon his impression, formed while working as an auditor, that the cashier was generally the chief operating officer at a bank. Seeing a document to be signed by the cashier and vice president, he assumed that the letter was validly issued by the Bank of Clarksville.

12. After the receipt and examination of the letter of credit, Tosco put Lankford Corporation back on the open account basis.

13. Lankford Corporation made purchases of substantial quantities of gasoline monthly during the period from October 1979 through May 1981. The monthly purchases on the open account regularly exceeded $100,000 and payments on the account were made by check drawn by Lankford Corporation on the Bank of Clarksville.

14. In May 1980, Little instructed Christine Parker to instruct James N. Lankford that in order to continue purchasing from Tosco on an open account, he would need to supply Tosco with a replacement or continuation letter of credit in the amount of $150,000, as the initial letter of credit terminated on June 1, 1980. Parker again instructed Lankford of these terms and as to the amount of the letter of credit, but again specified no form.

15. Tosco received, again by mail without any accompanying document, a second letter of credit designated as "irrevocable letter of credit letter number 105" dated May 14, 1980, again on Bank of Clarksville stationery and again bearing the signature, on behalf of the Bank of Clarksville, of Ken Atkins, Vice President and Cashier. This letter of credit was to terminate on May 14, 1981. (The May 14, 1980 letter of credit is attached hereto as Appendix A).

16. Upon receipt of the second letter of credit, Tosco continued to make sales to Lankford on the open account basis.

17. Lankford Corporation paid its account regularly until early January, 1981.

18. In early January 1981, checks drawn by Lankford Corporation on the Bank of Clarksville were returned by the bank to Tosco unpaid by reason of insufficient funds.

19. On January 9, 1981, Ken Atkins called Little, informed him that the checks would be paid, told him that he had been unaware of the dishonor, but that had he been, the checks would have been paid. Cashier's checks were then sent by the Bank of Clarksville to Tosco to cover the overdrafted amounts.

20. Tosco then put Lankford Corporation back on a cashier's check basis the latter part of January, 1981. On January 21, 1981, Little got another call from Atkins asking him to "open Lankford back up." At this time, the indebtedness of Lankford Corporation was in the amount of $109,175.67, which represented sales to Lankford Corporation made by Tosco between January 12, 1981 and January 21, 1981 (Exhibit 9). There was no discussion of the letter of credit.

On May 6, 1981, having failed to collect from Lankford for its debt, Tosco drew a draft to be presented to the Bank of Clarksville pursuant to letter of Credit No. 105 in the amount of $109,175.67.

The draft, and a document of transmittal, a statement of Lankford Corporation account certified as correct, and a copy of

the letter of credit of May 14, 1980 were sent by mail by the Exchange Bank and Trust Company of Eldorado, Arkansas to the Bank of Clarksville. The draft had been endorsed "For Deposit Only Prior Endorsement Guaranteed Tosco Corporation Lion Oil Division Acct. No. 15–221–5." In addition, it bore the endorsement "Pay to the Order of any Bank, Banker or Trust Co. All Prior Endorsements Guaranteed May 6, 1981, the Exchange Bank and Trust Company, Eldorado, Arkansas."

The documents were received at the Bank of Clarksville by Myers Jones, President, after business hours on May 8, 1981. After consulting with Frank Woods, Director and Chairman of the Executive Committee, Jones decided not to honor the draft.

The district court found that prior to the time the Tosco draft was received on May 8, 1981, neither Jones nor any other bank officer was aware of the existence of Letter of Credit No. 105. There was no record of the Bank of Clarksville's having issued that letter of credit nor was it registered in the ledger where letters of credit were supposed to be registered.

The draft was returned unpaid by the Bank of Clarksville to the Exchange Bank and Trust Company of Eldorado, Arkansas, where it was received on May 15, 1981. The Bank of Clarksville never contacted Tosco prior to the expiration date of the letter of credit, or thereafter, to inform Tosco of its dishonor or to request any further information about the draft or letter of credit.

As a result of the dishonor, Tosco brought the instant action for wrongful dishonor. At trial, the Bank of Clarksville raised essentially three defenses to plaintiff's allegations. First, it contended that the draft presented by Tosco did not comply strictly with the conditions stated in the purported letter of credit, and therefore dishonor was proper. Second, the Bank asserted that the actions of Ken Atkins exceeded his authority as an agent of the Bank, and therefore his actions were not sufficient to bind the Bank. In addition, the Bank contended that Tosco acted in a manner that was not commercially reasonable in believing that Atkins was acting within the scope of his authority.

Judge Wiseman found the Bank's strict compliance defense to be without merit, concluding that Tennessee does not follow the "strict compliance" rule, but even if it did, he found, "any asserted deviations from the conditions and terms of the letter of credit are so insubstantial that they would not have jeopardized the bank's position ... nor is there any possibility that the bank could have reasonably been misled to its detriment." The district judge then found that "Tosco was reasonably entitled to have concluded that Atkins had apparent authority to issue the letters of credit." Accordingly, Judge Wiseman held that the actions of Atkins in issuing the letters of credit were binding on the bank and rendered judgment in favor of Tosco in the amount of $108,852.27, the exact amount he found owing to Tosco on Lankford's account, plus pre-judgment interest from the date of dishonor, May 8, 1981, against Lankford Oil and the Bank of Clarksville. As heretofore stated, Lankford Oil did not appeal to this Court.

### III.

Before reaching the errors alleged to have been made by the district court, we first address briefly the role of the FDIC as Appellant in this case.

This action initially was filed in federal court as a diversity action pursuant to 28 U.S.C. § 1332, and jurisdiction was not disputed. After final judgment, but before the case was heard by this court, FDIC was substituted as Appellant. The authority of the FDIC to be appointed as receiver of a state bank is well established. 12 U.S.C. §§ 1819, 1821(e). As a receiver of a state bank the FDIC "shall possess all the rights, powers and privileges granted by State Law to a receiver of a State bank." 12 U.S.C. § 1821(e). Furthermore, the "rights of depositors and other creditors of any State bank shall be determined in accordance with applicable provisions of State law." 12 U.S.C. § 1821(g). By statute in

Tennessee, the FDIC is authorized to act as a receiver of a State bank.[1] As such the FDIC enjoys all the "duties, powers, and privileges" afforded receivers of closed banks under state law. T.C.A. § 45–2–802. The State Commissioner of Financial Institutions, as was done in this case, may appoint a receiver who acts pursuant to T.C.A. §§ 45–2–1503, 45–2–1504. We find nothing in these statutes affording the FDIC any special privileges as a receiver of a State bank as compared to any other receiver.

It can be said that as receiver the FDIC "stands in the shoes" of the Bank and enjoys no greater rights against creditors than the Bank itself enjoyed. *Jacobson v. Federal Deposit Insurance Corp.,* 407 F.Supp. 821, 827 (S.D.Iowa 1976); *see also Landy v. FDIC,* 486 F.2d 139, 147–48 (3d Cir.1973).

Therefore, we conclude that the substitution of the FDIC as Appellant does not affect the underlying merits of this case.[2]

### IV.

Appellant first alleges the district court erred in finding that Tosco's draft complied with the conditions of the letter of credit. Letter of Credit Number 105 issued by Atkins, allegedly under the authority granted him by the Bank of Clarksville, stated as a condition:

"Drafts under this Letter of Credit must state 'drawn under Bank of Clarksville Letter of Credit Number 105' thereon by the negotiating bank."

The draft presented to the Bank of Clarksville stated: "Drawn under Bank of Clarksville, Clarksville, Tennessee letter of Credit No. 105." Appellant asserts that because of the change of "L" in "Letter" to "l", the use of "No." instead of "Number," the addition of the words "Clarksville, Tennessee," and the fact that the language was placed on the draft by Tosco, and not by the negotiating bank, the draft was not in strict compliance with the conditions stated in the letter of credit.

Therefore, Appellant contends that the Bank acted properly in dishonoring the May 6, 1981 draft.

In addressing this question the district court stated:

The strict compliance defense of the Bank of Clarksville is without merit. The Court notes that Tennessee courts do not adhere to the "strict compliance" or "New York" rule. *See, e.g., C.N.A. Mortgage Investors, Ltd. v. Hamilton Nat'l Bank,* 540 S.W.2d 238 (Tenn.App.1975); *Talbot v. Bank of Hendersonville,* 495 S.W.2d 548 (Tenn.App.1972). Even if, however, Tennessee courts applied the strict compliance rule, the Court is of the opinion, and so holds, that any asserted

---

1. T.C.A. § 45–2–802 provides as follows:

   **45–2–802. Appointment of Federal Deposit Insurance Corporation as receiver of state bank—Powers and duties.**—The Federal Deposit Insurance Corporation may be appointed receiver of any state bank, the deposits in which are to any extent insured by said corporation and which shall have been closed on account of inability to meet the demands of its depositors, or otherwise by the law of Tennessee. The commissioner after taking possession of a state bank shall have the right to appoint the Federal Deposit Insurance Corporation as receiver. Upon acceptance of the appointment as receiver, the Federal Deposit Insurance Corporation shall not be required to post bond or security. If the said corporation accepts such appointment, it shall have and possess all of the duties, powers, and privileges provided by the laws of this state with respect to receivers of closed banks, except insofar as such duties, powers, and privileges are in conflict with the Federal Deposit Insurance Act. In addition thereto, the Federal Deposit Insurance Corporation as receiver shall have the right to make an emergency sale of assets of a closed bank as provided in part 15 of chapter 2 of this title.

2. As noted above, this case originally was filed under 28 U.S.C. § 1332 (diversity of citizenship) and not under a grant of federal jurisdiction. Jurisdiction was proper in the district court and was not disputed. The substitution of the FDIC as Appellant in its capacity as receiver for the Bank of Clarksville, after the decision of the district court, does not affect the jurisdiction of this Court. This case is distinguishable from this Court's recent decision in *FDIC v. Cuvrell, Receiver, et al.,* 718 F.2d 171, (6th Cir.1983), where we held, *inter alia,* that the bankruptcy court did not have subject matter jurisdiction to hear a claim against the FDIC as receiver of a State bank.

deviations from the conditions and terms of the letter of credit are so insubstantial that they would not have jeopardized the bank's position in an action for recovery against Lankford Corporation nor is there any possibility that the bank could have reasonably been misled to its detriment. In addition, the provisions of the letter of credit should be interpreted strictly against the party drafting the letter, and any ambiguity should be resolved against the drafting party. *See, Bossier Bank & Trust Co. v. Union Planters Bank,* 550 F.2d 1077, 1082 (6th Cir.1977); *Venizelos S.A. v. Chase Manhattan Bank,* 425 F.2d 461 (2d Cir.1970).

■ Appellant argues that the overwhelming majority approach is to follow the "strict compliance" or "New York" rule. This approach permits the issuer of a letter of credit to require upon presentment strict and precise compliance with the terms of the letter of credit. *See e.g. Chase Manhattan Bank v. Equibank,* 550 F.2d 882 (3d Cir.1977); *Far Eastern Textile Lt'd. v. City National Bank and Trust Company,* 430 F.Supp. 193 (S.D.Ohio 1977).

■ Tennessee, however, has not addressed directly the issue of the standard of conformity required in a suit brought by a beneficiary against an issuer for wrongful dishonor. *See Bossier Bank and Trust Co. v. Union Planters Bank,* 550 F.2d 1077 (6th Cir.1977); *CNA Mortgage Investors Lt'd v. Hamilton National Bank,* 540 S.W.2d 238 (Tenn.App.1975) *lv. to appeal denied* (1976). We hold that the district court did not err in concluding that the "strict compliance" defense is not controlling under the facts of the present case.

Appellant next asserts the trial judge erroneously concluded that the actions of Atkins bound the Bank under the doctrine of apparent or ostensible authority.

■ The well established rule in Tennessee, as elsewhere, is that a principal is bound by the acts of an agent within his apparent or ostensible authority. *McCoy v. Willis,* 177 Tenn. 36, 145 S.W.2d 1020 (1940); *Murphy v. The Southern Life Ins. Co.,* 62

Tenn. 440 (1874); *Rural Educ. Ass'n. v. Bush,* 42 Tenn.App. 34, 298 S.W.2d 761 (1956). The following definition of apparent or ostensible authority has been approved by the Supreme Court of Tennessee in *Southern Ry. Co. v. Pickle,* 138 Tenn. 238, 245–246, 197 S.W. 675, 677 (1917):

"Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. Ostensible authority is such authority as a principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess, and in some jurisdictions it is so defined by statute. Ostensible authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential to the application of the above general rule that two important facts be clearly established: (1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts, and, acting in good faith, had reason to believe, and did believe, that the agent possessed the necessary authority.

"The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but

by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent." (citation omitted).

More recently the Supreme Court of Tennessee has reaffirmed its adherence to this basic principle of agency law. In *V.L. Nicholson Co. v. Transcon Investment & Financial Ltd.*, 595 S.W.2d 474, 483 (Tenn. 1980) the Court stated:

> In order to determine whether an agency has been established, the relationship of the parties is scrutinized, and the facts will establish agency whether the parties so intended or understood. *Rich Printing Co. v. McKellar's Estate*, 46 Tenn.App. 444, 330 S.W.2d 361 (1959). "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing . . . such authority as a reasonably prudent man, using diligence and discretion, in view of the party's conduct, would naturally suppose the agent to possess." *Id.* at 376. If it can be shown that the plaintiff held the agent out as having such authority or permitted him so to act, and if the person dealing with the agent "knew of the facts, and, acting in good faith, had reason to believe, and did believe, that the agent possessed the necessary authority," then the general rule on apparent authority may be applied. *Id.*

Judge Wiseman carefully scrutinized the relationship of the parties, and concluded that Tosco acted reasonably and in good faith in believing that the Bank's agent, Ken Atkins, who held the position of Vice-President and Cashier of the Bank, possessed the necessary authority to issue the letter of credit. Under the doctrine of apparent or ostensible authority as articulated by the Tennessee courts in the cases cited above, we hold Judge Wiseman's conclusion that the Bank was bound by the actions of Atkins to be correct. Appellant's contentions to the contrary are without merit.

Finally, Appellant alleges error by the district court in awarding prejudgment interest at ten percent from May 8, 1981. Appellant argues that the earliest possible date which can be considered for purposes of dishonor is May 11, 1981, because the Bank of Clarksville received the draft after business hours on Friday, May 8, 1981. In addition, Appellant asserts that awarding prejudgment interest at ten percent was excessive in this case. A bank has three banking days in which to honor the draft. T.C.A. § 47–5–112. The draft at issue here was presented to the Bank after the close of the banking day of May 8, 1981. Thus, effective dishonor did not occur until the next banking day, even though the decision to dishonor had been made Friday evening, May 8, 1981. Therefore, we conclude that Appellant is correct in contending that the date of dishonor was May 11, 1981. Appellant's contention, however, that prejudgment interest was excessive in this case is without merit. T.C.A. § 47–14–123 provides that prejudgment interest as an element of damages may be awarded by a court "in accordance with the principles of equity at any rate not in excess . . . of ten percent. . . ." We find no basis for Appellant's contention that the award of prejudgment interest was excessive, nor does Appellant assert any rationale for its contention except to state that under the circumstances of the case it was excessive. The awarding of prejudgment interest and at what rate is within the discretion of the trial judge. *See Farmers Chemical Ass'n. v. Maryland Casualty Co.*, 421 F.2d 319, 323 (6th Cir.1970). We cannot say that the district judge abused his discretion in the present case.

Accordingly, we conclude that the "strict compliance" defense asserted by Appellant is without merit. The actions of the Bank of Clarksville, and its agent Ken Atkins, in issuing Letter of Credit Number 105 were binding on the Bank. Furthermore, Tosco acted reasonably in relying on the letter of credit to its detriment. However, we find that the district court erred in awarding prejudgment interest from May 8, 1981; the correct date should be May 11, 1981.

Judge Wiseman did not abuse his discretion however, in awarding prejudgment interest at a rate of ten percent. The judgment of the district court is affirmed with the one modification as noted above. The case is remanded to the district court with directions to make the computation of interest from May 11, 1981. The costs of this appeal are taxed against the FDIC as receiver of the United Southern Bank of Clarksville.