William Henry ALLEN, Essie Applegate, Linda Earl Baskett, George E. Dowden, Eugene H. Fontaine, Mildred M. Forbes, Robert Goff, Dr. Julian R. Hardaway, Joseph W. Hart, Lucy S. Leonardi, John H. McGehee, Virginia A. Miller, O.W.K.Y. & Company, E. Wayne Pace, Kay McGehee, Lorena S. Richardson, William P. Shumate, Estate of Lucy Smith, Mabel F. Smith & Dorothy L. Smith, Co-Administrators, Mrs. Irene W. Stith, Charles R. Thompson, James R. Watts, Gail H. Witten, Houston C. Woolfolk

v.

FEDERAL DEPOSIT INSURANCE CORPORATION–CORPORATE CAPACITY; Federal Deposit Insurance Corporation-receiver of United American Bank, Knoxville, First Tennessee Bank, Knoxville; and Billy Adams, Individually and as Commissioner of Financial Institutions.

No. CIV. 3–84–274.

United States District Court, E.D. Tennessee, N.D.

Oct. 24, 1984.

Bernard Bernstein, Knoxville, Tenn., George W. Miller, Washington, D.C., for plaintiffs.

G.W. Morton, Jr., Knoxville, Tenn., Kate Eyler, Asst. Atty. Gen., Nashville, Tenn., for defendants.

MEMORANDUM

HULL, District Judge.

This is a cause of action against the Federal Deposit Insurance Corporation [FDIC] in its corporate capacity [1] pursuant to 12 U.S.C. § 1819. This Court has jurisdiction under 28 U.S.C. § 1331. This cause was tried before this Court without a jury

---

1. The complaint alleges a cause of action against both FDIC-corporate and -receiver. However, pursuant to this Court's order entered September 14, 1984, all claims against FDIC-receiver were remanded to state chancery court. [Order No. 33]. Plaintiffs agreed to voluntarily dismiss the claim herein against FDIC-receiver. *Id.*

on Thursday, October 11, 1984. Reported below are this Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52.

On October 15, 1982, plaintiffs, shareholders of the Farmers Deposit Bank of Brandenburg, Kentucky [hereinafter FDB], sold all the outstanding stock in the bank to C.H. Butcher, Jr., and two associates [hereinafter the Butcher group]. [Stipulations, No. 37, ¶ 1–2]. The purchase price for plaintiffs' stock was $78.82 per share. [Id., ¶ 3]. The Butcher group paid plaintiffs $50 per share in cash and C.H. Butcher gave plaintiffs promissory notes for the balance. [Id. & Pltf. Exh. 4]. The promissory notes were secured by irrevocable letters of credit issued by United American Bank [hereinafter UAB] to plaintiffs. [Id.]. A separate letter of credit secured each promissory note. [Id.].

The letters of credit were drafted by C.A. Ridge, an attorney for UAB, and signed by Jack Patrick, a UAB loan officer. [Id., ¶ 5]. Mr. Ridge also drafted a "Letter of Credit Commitment and Agreement", dated October 14, 1982, and an accompanying "Promissory Note" dated October 15, 1982, payable to UAB. [Id., ¶ 6]. On October 15, 1982, the Butcher group signed both the "Letter of Credit Commitment and Agreement" and the "Promissory Note". [Id.]. In exchange for the signed documents, Mr. Ridge gave the Butcher group the signed letters of credit to be delivered to plaintiffs at the FDB closing. [Id.]. The "Letter of Credit Commitment and Agreement" and "Promissory Note" were delivered by Mr. Ridge to Mr. Patrick at UAB. [Id.].

In accordance with standard UAB practice, on November 5, 1982, C.H. Butcher executed for each plaintiff's letter of credit a standard three page UAB form titled "Authorization for Standby Letter of Credit". [Id., ¶ 7]. Also, in accordance with standard practice, UAB charged a fee in exchange for issuing the letters of credit to plaintiffs. [Id., ¶ 8]. This fee, paid by C.H. Butcher, was equal to one percent of the aggregate amount of the letters of credit issued to FDB creditors. [Id.].

UAB at all relevant times was an FDIC-insured state bank. [Id., ¶ 9]. On February 14, 1983, UAB failed and was closed by the Tennessee Commissioner of Financial Institutions. [Id.]. On March 21, 1983, FDIC-receiver sent a letter to each plaintiff disavowing any obligation to fund their Letters of Credit. [Id., ¶ 11]. In October 1983, 23 of the 26 plaintiffs formally attempted to make draws under their letters of credit. [Id.]. By letter dated December 5, 1983, the FDIC advised each such plaintiff that it refused to fund the letters. [Id.].

The entire principal amount of each promissory note issued to plaintiffs by the Butcher group was unpaid as of February 14, 1983, and remains unpaid to date. [Id., ¶ 13]. One interest payment, representing interest accrued through April 15, 1983, has been received by plaintiffs on each of the notes. [Id.]. The entire amount of interest accrued thereafter remains unpaid. [Id.]. All of plaintiffs' notes are presently in default. The maker, C.H. Butcher, is the subject of an order for relief entered on or about July 17, 1983, in response to an involuntary petition filed under the bankruptcy laws by his creditors. [Id.].

The promissory note issued by the Butcher group in exchange for the issuance by UAB of the letters of credit provides as follows:

[The Butcher group] promise to pay to the order of UNITED AMERICAN BANK IN KNOXVILLE, a Tennessee banking corporation (the "Bank"), on demand, such amount(s) as the Bank may be required to disburse on behalf of Borrower on account of Letters of Credit provided by the Bank for the Borrower to the selling shareholders of Farmers Deposit Bank of Brandenburg, up to the aggregate total principal sum of Two Million Seven Hundred Sixty-Eight Thousand Eight Hundred Ninety Dollars ($2,768,890.00), together with interest on sum advanced as drawn from the date of each such advance, at a fluctuating rate equal at all times to the Prime Rate of

the Chemical Bank, New York, New York, plus one percent (1%).

[Pltf. Exh. 7].

At the time UAB issued plaintiffs' letters of credit in October 1982, a pamphlet published by FDIC provided:

What types of deposits are insured?

All types of deposits received by a bank in its usual course of business are insured, including savings deposits, checking deposits, Christmas savings and other open-account time deposits, time certificates of deposits, uninvested trust funds, certified checks, cashiers' checks, officers' checks, money orders and drafts, *letters of credit,* and travelers' checks for which an insured bank is primarily liable.

Pltf. Exhs. 12 and 13 (emphasis added).

The issue to be decided is whether plaintiffs' letters of credit are insured deposits within the meaning of 12 U.S.C. § 1813(*l*)(1). That section provides:

(1) The term "deposit" means—

(1) the unpaid balance of money or its equivalent received or held by a bank in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by its certificate of deposit, or a check or draft drawn against a deposit account and certified by the bank, or a letter of credit or a traveler's check on which the bank is primarily liable: *Provided,* That, without limiting the generality of the term "money or its equivalent", any such account or instrument must be regarded as evidencing the receipt of the equivalent of money when credited or issued in exchange for checks or drafts or for a promissory note upon which the person obtaining any such credit or instrument is primarily or secondarily liable, or for a charge against a deposit account, or in settlement of checks, drafts, or other instruments forwarded to such bank for collection.

■ Under the plain language of the statute a letter of credit is a deposit if: (1)

the issuing bank is primarily liable on the letter of credit and (2) the letter evidences money or its equivalent received or held by the bank in its usual course of business. The statute mandates that a letter of credit must be regarded as evidencing money or its equivalent when given in exchange for a promissory note upon which the person obtaining the letter of credit is primarily or secondarily liable. 12 U.S.C. § 1813(*l*)(1). Thus, this Court finds that a letter of credit which meets the above-stated requirements is an insured deposit within the meaning of 12 U.S.C. § 1813(*l*)(1). *See Philadelphia Gear Corp. v. FDIC,* Civ. No. 82–1191–W, unpublished slip op. at 18–25 (W.D.Okla. Feb. 9, 1984).

■ In this case there is no dispute that UAB is primarily liable on the letters of credit and that the Butcher group is primarily liable on the promissory note given in exchange for the letters of credit. The dispute concerns whether the "promissory note" issued by the Butcher group in exchange for the letters of credit was in fact a promissory note.

Defendants theory is that the note given by the Butcher group in exchange for the letters of credit is not a promissory note but a simple contract to reimburse the UAB when and if the bank is called on to pay the letters of credit. Defendants argument can be summarized as follows: A promissory note is: (1) an unconditional promise to pay, (2) a sum certain, and (3) payable on demand or at a time certain. The note in this case fails to meet these requirements because (1) the promise to pay is contingent on the event that drafts are drawn against the letters of credit; (2) the amount payable on the note is not certain because it is dependent on whether and in what amounts drafts are drawn on the letters of credit; and (3) the time for payment is uncertain because payment is due only when and if a draw is made against the letters of credit.

Plaintiffs say that a promissory note is simply a written promise to pay. Further,

plaintiffs say that the contingent nature of the note may render the note non-negotiable but does not destroy its status as a promissory note. In any event, plaintiffs argue that the note contains an absolute and unconditional promise to pay.

The term "promissory note" within the meaning of 12 U.S.C. § 1813(*l*)(1) is not defined by the federal statute. However, a well-accepted principle of statutory construction is that words of a statute will be given their natural and commonly understood meaning. *See generally* 73 Am. Jur.2d *Statutes* § 206 (1974). To determine the natural and commonly understood meaning of the term "promissory note", federal common law must be applied. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The Uniform Commercial Code [UCC] as applied by the states and interpreted in the case law, is a recognized source of federal common law. *See United States v. Hext*, 444 F.2d 804 (5th Cir.1971).

Article 3 of the UCC defines a *negotiable* promissory note as an instrument signed by the maker which contains an *unconditional promise* to pay a *sum certain* in money, payable on *demand or at a definite time* and payable to order or to bearer. UCC § 3–104(1)(a)–(d) (emphasis supplied). A note which is not payable to order or to bearer but otherwise meets the above definition, although technically non-negotiable, is treated as a negotiable note. UCC § 3–805.

Defendant argues that the promissory note at issue is conditional and therefore meets neither the definition of promissory note in section 3–104(1) nor the definition in

section 3–805. Defendant says a promissory note which meets neither definition is to be treated as a simple contract outside the scope of article 3. Relying on Tennessee common law predating the UCC, defendant concludes that a note such as the one at issue is not a promissory note. *See Mason v. Metcalf*, 63 Tenn. (4 Baxter) 440 (1874).

Article 3 of the UCC, does not define promissory note for all purposes. *See* UCC § 3–104(3). Rather, article 3 defines negotiable promissory notes or promissory notes, otherwise non-negotiable, which are to be treated as negotiable notes. Modern case law holds that a promissory note which is non-negotiable within the meaning of article 3 because of an express condition is nevertheless a promissory note. *See e.g. Leroux v. Doniphan Retirement Home, Inc.*, 663 S.W.2d 791 (Mo.App.1984), application to transfer to S.Ct. denied, *Id.; Fejta v. Werner Enterprises, Inc.*, 412 So.2d 155, 158 (La.App.), *cert. den.* 415 So.2d 953 (La.1982); *Reid v. Cramer*, 24 Wash.App. 742, 744, 603 P.2d 851, 852, 852–53 (1979).

In determining applicable federal common law, those interpretations and modifications of the UCC which the Court deems reflective of the weight of authority and consistent with the purposes of the federal statute should be followed. *Hext*, 444 F.2d at 811. The Court finds that the weight of authority is that a promissory note which is non-negotiable within the meaning of article 3 is nevertheless a promissory note. The Court further finds that outside the scope of article 3, the commonly accepted meaning of a "promissory note" is a written promise to pay. This definition is consistent with the plain language of the statute which makes no mention of negotiability.[2] In this case, the promissory note is a

---

**2.** Defendant says that when read in *pari materia* with the other terms in the statute, the term "promissory note" must be construed to mean a negotiable instrument. The Court agrees that this maxim of statutory construction is applicable but disagrees that its application requires that "promissory note" be construed to mean

"negotiable promissory note." The other terms of the statute such as check and draft are not by definition negotiable instruments. Rather, they are negotiable instruments only if they meet the requirements of negotiability set forth in the UCC.

written promise to pay upon which those persons who obtained the letters of credit are primarily liable. Thus, under the statute, the letters of credit issued by the bank in exchange for the promissory note are insured deposits. 12 U.S.C. § 1813(*l*)(1) (1982). The Court believes that this decision is consistent with the purpose of the Federal Deposit Insurance Corporation to instill confidence in the commercial banking system.

Because the Court has found that the note in issue is a promissory note within the meaning of 12 U.S.C. § 1813(*l*)(1), the Court will not address plaintiffs' alternative argument that the note contains an unconditional and absolute promise to pay and thus is negotiable under article 3.

For the foregoing reasons, the Court finds that plaintiffs are entitled to judgment in the amount of the principal and interest due under each plaintiff's promissory note as of July 17, 1983, up to the face amount of each plaintiff's letter(s) of credit or $100,000, whichever is less; plus prejudgment interest on the sum so computed from July 17, 1983, at the rate of ten percent (10%) per annum. Tenn.Code Ann. § 47–14–123; *see Tosco Corp. v. FDIC,* 723 F.2d 1242, 1249–50 (6th Cir.1983).