E. Denton JONES, Plaintiff,

v.

FIRST EQUITY CORPORATION OF FLORIDA; Paine, Webber, Jackson & Curtis, Incorporated; and Richard B. Rayl, Jr., Defendants.

No. Civ. 3–84–822.

United States District Court,
E.D. Tennessee, N.D.

March 28, 1985.

Stephen P. Parsons, Stophel, Caldwell & Heggie, P.C., Knoxville, Tenn., for plaintiff.

Rebecca O. Gillen, L. Anderson Galyon, III, Knoxville, Tenn., for defendants.

## MEMORANDUM

JARVIS, District Judge.

This is a cause of action for alleged violation of federal and state securities laws and common law misrepresentation, fraud and deceit. The case is before the Court on motion of defendant, Paine, Webber, Jackson & Curtis, Inc., for summary judgment.

The complaint alleges that defendant Richard B. Rayl, Jr. ["Rayl"], as an agent of both defendant First Equity Corporation of Florida ["First Equity"] and defendant Paine, Webber, Jackson & Curtis, Inc. ["Paine Webber"], through representation and fraud, persuaded plaintiff E. Denton Jones ["Jones"] to place an order with First Equity for 10,000 shares of stock of International Property Exchange, Inc. ["IPX"]. The complaint further alleges that defendant Rayl told plaintiff that First Equity and Paine Webber were making a market in IPX stock when in fact there was no active market for such stock; and that when Jones attempted to sell his IPX stock, he was informed by defendant Rayl that there was no market for the stock, and therefore, his stock could not be sold.

The complaint alleges the following bases of liability: Counts I and II—common law fraud and misrepresentation; Count III—misstatement and omission of material facts in the sale of securities in violation of section 12(2) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77$l$; Count IV— use of a scheme to defraud and misstatements and omissions in sale of securities in violation of section 17(a) of the 1933 Act, 15 U.S.C. § 77q; Count V—"controlling person liability" under section 15 of the 1933 Act, 15 U.S.C. § 77o and section 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78t(a); Count VI—use of fraud, misrepresentation and omission of material facts in sale of securities in violation of section 10 of the 1934 Act, 15 U.S.C. § 78j(b); and Rule 10b–5, 17 CFR § 240.-10b–5; Count VII—misrepresentation and fraud in the sale of securities in violation of Tennessee Code Annotated § 48–16–101 –124 (1984); Count VIII—misrepresentation and fraud in violation of Florida Code Annotated § 517.011 *et seq.;* and Count IX—vicarious liability and conspiracy.

As grounds for summary judgment on Counts I, II, III, IV, VI, VII, VIII and IX, defendant Paine Webber says that it cannot be held vicariously liable for the alleged illegal acts of defendant Rayl because Rayl was an employee of First Equity and no principal and agent relationship existed between Paine Webber and Rayl. Further, Paine Webber says that pursuant to a "Clearance Agreement", First Equity and Paine Webber had the relationship of either independent contractor or principal

and agent and if the latter, Paine Webber was the agent of First Equity. In support of its motion, Paine Webber has submitted an affidavit of the Secretary and Treasurer of First Equity which states that Rayl was an employee of First Equity and not an employee and agent of Paine Webber. [Doc. 10, Attachment]. The affidavit further states that First Equity acted as an introducing firm for its customer, plaintiff Jones, and Paine Webber served as a carrying firm, whose responsibilities involved no direct contact with plaintiff except for confirmation of sales and purchases. Paine Webber also has submitted a copy of the Clearance Agreement.

In response, plaintiff says that the Clearance Agreement indicates that First Equity was acting as the agent of Paine Webber and further that account statements furnished plaintiff contained representations indicating that First Equity was working through Paine Webber in servicing plaintiff's account. Finally, plaintiff says First Equity and its employees were allowed to make statements relating to Paine Webber and its involvement in the making of a market for IPX stock, upon which statements plaintiff relied in purchasing IPX stock. Thus, plaintiff says numerous facts exist from which apparent authority, if not express authority, could be found.

■■■ "Agency is the fiduciary relation which results from the manifestations of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. The one for whom action is to be taken is the principal. The one who is to act is the agent." RESTATEMENT (2d) OF AGENCY, § 1 (1958). "In order to determine whether an agency relationship has been established, the relationship of the parties is scrutinized, and the facts will establish agency whether the parties so intended or understood." *Tosco Corp. v. FDIC,* 723 F.2d 1242, 1249 (6th Cir.1983) *quoting V.L. Nicholson Co. v. Transcon Investment and Financial Ltd.,* 595 S.W.2d 474, 483 (Tenn.1980). Pursuant to the doctrine of *respondeat superior,* the

rule in Tennessee is that a principal is bound by the acts of an agent within his apparent or ostensible authority. 723 F.2d at 1248 [citations omitted]. Ostensible or apparent authority to act as an agent exists when the principal affirmatively, intentionally or by lack of ordinary care causes or allows a third party to act on an apparent agency. *Id.* Two facts must be established: (1) that the principal held the agent out to the public as possessing authority; and (2) that the person dealing with the agent knew of the facts and in good faith believed the agent had authority. *Id.* The liability of the principal is not determined merely by what was the apparent authority of the agent, but also by what authority the third party was justified in believing the principal had conferred. *Id.* Although apparent authority normally results from a prior relation of principal and agent, such a prior relationship is not required. RESTATEMENT (2d) OF AGENCY § 8, Comment (a) (1958). Finally, a company has a duty to prevent the use of its prestige by agents to defraud the public. *Holloway v. Howerdd,* 536 F.2d 690, 696 (6th Cir.1976).

■■■ On the record in this case, the Court cannot say as a matter of law that First Equity and Rayl were not agents of Paine Webber. Paine Webber admits a relationship existed between it and First Equity, but contends that it was the agent and not the principal. However, on its face the Clearance Agreement appears to give Paine Webber control over First Equity with regard to servicing customer accounts. [*See* Doc. 10, Exh. A, ¶¶ 1–3, 5]. Further, in light of the allegations that Paine Webber allowed First Equity and its employees to make statements relating to Paine Webber and its involvement in the making of a market in IPX stock, questions of fact exist whether Rayl and First Equity acted with apparent authority as agent of Paine Webber.

As grounds for summary judgment on Counts I, II, III, V, VI, VII and VIII, Paine Webber says that "controlling personal liability" requires allegations of violations of the 1933 and 1934 Acts and direct participa-

tion in the acts constituting the securities violations. Paine Webber says Counts I and II must fail because they allege no violation of either Act. Paine Webber says Count III must fail because Paine Webber had only limited direct contact in the securities purchase transaction with plaintiff. Paine Webber says Count VI must fail because the affidavit and Clearance Agreement indicate that the elements necessary to make out a cause of action under section 10 and Rule 10b–5 of the 1934 Act cannot be made out against Paine Webber directly.

Plaintiff says that a controlling person can be held responsible for securities violations by the controlled person despite the fact that the controlling person has no direct participation in the actions constituting securities violations. Further, plaintiff says that if Paine Webber is found to be a controlling person in its relationship with Rayl and First Equity, then Paine Webber can be held jointly and severally liable with Rayl and First Equity for the violations despite the fact that only Rayl and First Equity may have committed the actual violations. Plaintiff says that whether Paine Webber is a controlling person is a question of fact. Plaintiff does not allege that controlling person liability exists with respect to Counts I, II, VII, or VIII.

Section 15 of the 1933 Act provides: Every person who ... controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with ... the ... controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the controlled person is alleged to exist.

15 U.S.C. § 77o.

Section 20(a) of the 1934 Act provides: Every person who, directly or indirectly, controls any person liable under any provision of this chapter or rule or regulation thereunder shall also be liable jointly and severally with ... the ... controlled person to any person to whom such controlled person is liable, unless the con-

trolling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

Thus, if Paine Webber is a controlling person under 15 U.S.C. § 77o, then Paine Webber is jointly and severally liable for any violation by defendants of 15 U.S.C. § 77l, as alleged in Count III. If Paine Webber is a controlling person under 15 U.S.C. § 78t(a), then Paine Webber is jointly and severally liable for any violation by defendants of 15 U.S.C. § 78j(b) and Rule 10b–5, as alleged in Count VI.

■ "[I]n order to establish control within the meaning of § 20(a), it is not necessary to establish a strict agency relationship. Rather, it is only necessary to show some indirect means of discipline or influence to find that a person is a controlling person within the meaning of the Section." *McGraw v. Matthaei*, 388 F.Supp. 84, 93 (E.D.Mich.1972); *see also, Kaufman v. Merrill Lynch, Pierce, Fenner & Smith*, 464 F.Supp. 528 (D.C.Md.1978). The test for control is the same under the controlling person provision in section 15 of the 1933 Act. *Sun First Nat'l Bank of Orlando v. Miller*, 77 F.R.D. 430 (S.D.N.Y.1978). Generally, whether a person is a controlling person within the meaning of these sections is a question of fact. *Id.*

■ As previously stated, the Clearance Agreement on its face appears to give Paine Webber control over First Equity with regard to certain aspects of servicing customer accounts. Whether in fact Paine Webber exercised control over either Rayl or First Equity sufficient to invoke liability under the controlling person provisions is a question of fact.

Finally, as grounds for summary judgment on Count IV, Paine Webber says that no private right of action exists for alleged violations of § 17(a) of the 1933 Act, 15 U.S.C. § 77q. Plaintiff says that there is a conflict in this Circuit among the district

courts whether a private right of action exists under § 17(a). However, plaintiff says that the last indication given by the Sixth Circuit is that a private right of action may well exist under § 17(a).

Section 17(a) grants no explicit private right of action. In the past, the courts have found an implied right of action in many sections of the federal securities acts where no explicit private right of action is provided. However, recently courts have become more reluctant to imply private rights of action because of the more restrictive approach to implying private rights of action now followed by the Supreme Court. *See* David L. Ratner, *Securities Regulation in a Nutshell*, (2d ed. 1982) at 259–60. The Sixth Circuit Court of Appeals has not addressed the issue whether an implied private right of action exists under § 17(a). However, in several decisions the Sixth Circuit assumed without deciding that a private right of action exists. *See Herm v. Stafford*, 663 F.2d 669, 677–79, n. 12 (6th Cir.1981); *Gutter v. Merrill Lynch, Pierce, Fenner & Smith*, 644 F.2d 1194, 1196–97 (6th Cir.1981), *cert. den.* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Simmons v. Wolfson*, 428 F.2d 455 (6th Cir.1970), *cert. den.* 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971). In each of these decisions, the issue whether a private right of action exists under § 17(a) was not raised before the Court and was not required to be decided by the Court because the action was dismissed on other grounds. *Id.* Therefore, these decisions are not authority for the position that an implied right of action exists. Most recently, the Sixth Circuit has expressed substantial reservations with regard to the existence of an implied private right of action under another section of the federal securities acts. *See Rauchman v. Mobil Corp.*, 739 F.2d 205 (6th Cir.1984).

 Whether an implied private right of action exists must be determined by the four-pronged test set forth by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The four factors which must be considered are: (1) is the plaintiff a member of the class for whose benefit the statute was enacted; (2) is there a legislative intent to indicate creation of the remedy; (3) is implying the remedy consistent with the legislative scheme; and (4) is the cause of action one traditionally relegated to state law. 422 U.S. at 78, 95 S.Ct. at 2087. Legislative intent is considered to be the most important factor. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). If legislative intent is lacking, the other three factors need not be considered. *Id.* In discerning legislative intent, three factors are considered: (1) the language of the statute; (2) its legislative history; and (3) its place in the legislative scheme. *See Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). In a well-reasoned opinion by Judge Reed of the United States District Court for the Eastern District of Kentucky, the Court applied the four-factor test and determined that no implied private right of action exists under section 17(a). *Ingram Industries, Inc. v. Nowicki*, 502 F.Supp. 1060 (E.D.KY.1980). The Court noted that the legislative history of the 1933 Act indicates that section 17(a) was intended to afford a basis for injunctive relief and for criminal liability and was not intended to provide a civil remedy. Further, the Court noted that sections 11 and 12 of the 1933 Act provide various civil remedies for violations of the Act and therefore no need exists to provide further civil remedies by implying a private right of action under section 17(a). Finally, the Court noted that although the United States Supreme Court has implied a private right of action in the nearly identical provision of section 10 of the 1934 Act, the Supreme Court subsequently has stated that it only did so because the lower courts had done so for 25 years. As indicated, recently the Supreme Court has adopted a restrictive approach to implying private rights of action.

Two circuit courts of appeals have held that no private right of action exists under section 17(a) of the 1933 Act, while four circuit courts of appeals have held that such an action exists.* *See Landry v. All American Assur. Co.,* 688 F.2d 381, 384 nn. 11 & 12 (5th Cir.1982). This Court is of the opinion that the decision of those circuits which have found an implied private right of action are not persuasive precedent because either they were decided prior to *Cort v. Ash* and its progeny restricting implied private rights of action, or because they failed to apply the *Cort* four-factor test. *See Landry,* 688 F.2d at 384–85; *Hudson v. Capital Management International, Inc.,* 565 F.Supp. 615, 626 (N.D.Cal.1983). On the other hand, those circuits which have held that no implied private right of action exists have supplied a more insightful analysis to support their decisions. *See Landry,* 688 F.2d at 384–91; *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 788–91 (8th Cir.1967). In particular, the Fifth Circuit Court of Appeals has held that consideration of the conservative trend toward implying private rights of action and application of the *Cort* test lead to the conclusion that no private right of action exists under section 17(a). 688 F.2d at 391.

In view of the Sixth Circuit's recent reservations with respect to implying a private right of action under the securities laws, the conservative trend toward implying private rights of action in general and the decisions of those courts which have applied the *Cort* test to determine whether a private right of action exists under section 17(a), this Court holds that no private right of action exists under section 17(a).

For the foregoing reasons, Paine Webber's motion for summary judgment is DENIED as to Counts I, II, III, V, VI, VII, VIII, and IX, and is GRANTED with respect to Count IV.

Order Accordingly.

---

* Although both the Seventh and Ninth Circuits previously have held that an implied private right of action exists under section 17(a), it appears that those holdings now may be subject to question. *See Roskos v. Shearson/American Exp., Inc.,* 589 F.Supp. 627, 629–31 (E.D.Wis. 1984); *Hudson v. Capital Management International, Inc.,* 565 F.Supp. 615, 626 (N.D.Cal.1983).