VIDA EDMONSON v. BEULAH WATERSTON, Appellant.—119 S. W. (2d) 318.

Division Two, August 17, 1938.

*Roy Hamlin,* and *Ben Ely* for appellant.

*Mahan, Mahan & Fuller* for respondent.

1084

WESTHUES, C.—Respondent, plaintiff below, filed this suit against appellant to set aside a warranty deed conveying to appellant a tract of land containing about fifty-four acres in Marion County, Missouri. The trial court entered a decree for plaintiff and defendant appealed.

Respondent insists that the appeal should be dismissed because appellant in his brief failed to make any assignment of error. The only point made by appellant is that the evidence did not justify the decree of the trial court. This is covered by the following assignment, which we deem sufficient:

"The learned court below erred in finding upon the evidence for the plaintiff and against the defendant."

Plaintiff and her husband, James H. Edmonson, owned, as tenants by the entirety, the tract of land in dispute. Edmonson had been in the real estate business for many years. During these years he executed deeds and chattel mortgages, a majority of which were ac-

knowledged before J. H. Totsch, a notary public, who also prepared some of these papers for Edmonson. The deed, which was canceled by the decree of the court, purported upon its face to have been executed and acknowledged on the second day of October, 1933. It was signed by plaintiff and her husband. Acknowledgment of the deed appears to have been taken before John H. Totsch, as notary public. The deed was recorded on June 20, 1934. Plaintiff's husband died on June 27, 1934. Thereafter plaintiff filed this suit to cancel the deed. Plaintiff testified that her husband had a dispute with a neighbor over a private road running through the fifty-four acre tract of land in question; that her husband had cut trees and permitted them to fall across this private road obstructing it, whereupon the neighbor filed a suit against her husband; that this occurred in November or December, 1933; that her husband informed her he was going to show Mr. Carstarphen, attorney for the neighbor, a trick, and deed the land to the Waterstons, that is, to appellant and her husband. Plaintiff testified that she refused to be a party to this deal and refused to sign the deed. Appellant and her husband had been living upon land owned by Edmonson. Waterston an Edmonson had also been jointly interested in a dairy business. Plaintiff further testified that later, about December, 1933, her husband informed her that he had procured a purchaser for the land; that she signed a blank form deed intending to convey the tract of land in question to the prospective purchaser for the sum of $2000. Note plaintiff's evidence:

"Mr. Cable was my attorney and represented me in filing the original petition in this case and continued to represent me up to the time of his death. He was acting as my attorney when he brought me this deed. He had procured it from defendant's counsel. I wrote the name 'Vida D. Edmonson' that appears on Plaintiff's Exhibit (1). Along in the first week in December, 1933, my husband one morning after breakfast told me he had a cash deal for the fifty-four acres. I can's recall the Party's name because it was a man I didn't know, but as I understood it he was a man who lived in that vicinity, and he had mentioned this man to me once before as a prospective buyer. He pulled a blank form out of his pocket this morning and said 'Vida, I believe this man is going to buy this 54 acres, and I believe the deal is to be closed today, if you will sign this blank form.' It was a brand new blank form with no name as to whom it was to be conveyed, neither was there any date written in. Mr. Edmonson's name wasn't on this form. It was absolutely blank; when he handed it to me he said if I would place my name on the blank form, and I said 'Yes, Doc, I will, where shall I sign it?' He said 'On the second line.' I put my name on the second line—that is the signature there. There was no typewritten description of the property written in the blank, and no writing in the instrument either pen or ink

or in typewriting. Mr. Edmonson gave me the name of the party to whom the property was to be conveyed, and it wasn't Waterston. At that time I knew the name. I have tried my best to recall it but I don't remember. It was not Beulah Waterston or Herbert Waterston. I had no further conversation with my husband about it, but he just put the paper in his pocket and left the house. He said, ''if this deal goes through I will have the acknowledgment taken over the telephone. That will save you time. It will save you having to get ready and go down.' I said 'very well.' The day passed and no call came and when my husband came home at night, like anyone else I said, 'Doc, did your deal go through today?' He said, 'no, the man backed out.' I never at any time signed an instrument conveying the land to Beulah Waterston or Herbert Waterston.''

While plaintiff admitted that she signed the deed, she emphatically denied that she signed it on October 2, 1933, and also denied that Totsch called her over the telephone for the purpose of taking her acknowledgment.

Appellant testified that she was the owner of some full-paid building and loan stock; that Edmonson asked her for a loan of $1000; that she refused to make the loan, but agreed to let him have $1000 if he would deed her the fifty-four acres in question. At this point plaintiff's counsel objected to her testimony on the ground that the other party to the contract was dead. The trial court sustained the objection. The defendant's son, twenty years of age, testified that his mother cashed her building and loan stock; that the check which she received in payment thereof was turned over to Edmonson on October 2, 1933, and at the same time the deed here in question was delivered to the defendant. The check was offered in evidence by appellant and bore the date of October 2, 1933, was made payable to appellant in the sum of $1000, and was indorsed by appellant, her son, and J. H. Edmonson. An officer of the Building & Loan Association testified that appellant surrendered her building and loan stock, for which the check of $1000 was given to her by the company. The check was cashed October 3, 1933. Other evidence was introduced supporting appellant's theory. For example: Totsch, the notary public, testified that the deed was presented to him with all the necessary blanks filled and signed by both plaintiff and her husband; that he called plaintiff over the telephone on October 2, and took her acknowledgment to the deed. Another witness testified that on October 2, he saw the deed in the possession of Edmonson; that he went with Edmonson in a car and stopped at plaintiff's home where plaintiff took the deed into her home and returned it signed; that at that time the blanks on the deed had been filled in.

This being a suit in equity it is reviewable in this court upon the merits, and while some deference is given to the finding of the trial court, yet, this court, if it finds itself at variance with the

judgment of the trial court, will order a new decree in accordance with its finding. Plaintiff testified that she signed the deed in blank, intending thereby to convey the title to the land in dispute. Should a court of equity, under the circumstances, cancel the deed and leave the purchaser impoverished to the extent of $1000, the price paid for the land? There is no evidence in the record that appellant was a party to a fraud practiced upon plaintiff, if in fact there was any. Plaintiff's evidence discloses that her husband informed her that he had a purchaser for the property. Plaintiff did not remember who this party was, and evidently did not care, because her own evidence disclosed that she signed the deed willingly and assented to the suggestion that the acknowledgment be taken over the telephone. A completed deed, duly acknowledged, was delivered to the defendant.

It is a well known principle of law that where one of two innocent parties must suffer, the one whose negligence permitted the infliction of the injury should bear the loss. In Baade v. Cramer, 278 Mo. 516, 213 S. W. 121, l. c. 126 (3), this court said:

"The moving cause of this controversy is not due to an intentional wrong sought to be perpetrated by either of the parties. They dealt in good faith and gave full value for what they received. Under such circumstances, when one of two innocent persons must suffer for the wrongful act of another, he must suffer who placed the party doing the wrong in a position to do it. [Neuhoff v. O'Reilly, 93 Mo. 164, 6 S. W. 78.]"

See, also, Leonard v. Shale, 266 Mo. 123, 181 S. W. 16, l. c. 18 (5); M & M Securities Co. v. General Motors Accept. Corp., 79 S. W. (2d) 521, l. c. 529 (3); 12 R. C. L., sec. 149, p. 401. There is also a well-established rule in equity that, he who seeks equity must do equity. In this case, if the plaintiff desired to have the court cancel the deed, she should at least have offered to return the $1000 paid by the defendant for the land. It was her carelessness that permitted Edmonson to transfer the property to the defendant for $1000, which she claimed her husband had sold to another for $2000. The defendant, not being a party to that scheme, ought in justice be repaid the $1000. [Frederich v. Union Electric Light & Power Co., 336 Mo. 1038, 82 S. W. (2d) 79, l. c. 85 (2-6).] In 9 Corpus Juris, 1207, section 93, we find the following:

"Equity will not assist one who repudiated a contract and retained its benefits. This doctrine is reaffirmed by special statutory provisions in some jurisdictions. And the rule is the same in respect to both real and personal estate, and applies irrespective of the grounds on which cancellation is sought. Thus it applies where cancellation is asked because of fraud, mistake, duress, nonperformance, illegality, or want of consideration."

Suppose plaintiff did sign the deed in blank, the blanks were filled, including acknowledgment, before it was delivered to the de-

fendant. Upon its face it appeared to be a valid deed. Can plaintiff claim such a deed to be void and have it canceled? We think not. The deed conveyed the land plaintiff intended to convey. Her only complaints are, that the consideration should have been $2000 in place of $1000, and that appellant was not the proper grantee. In Farmers' Bank v. Worthington, 145 Mo. 91, 46 S. W. 745, l. c. 748, it is said:

"Plaintiff further contends that the name of the grantee (Youngs) and the consideration were written in different ink from the balance of the deeds, and were put in after the deeds were executed, and that, independent of the alleged fraud, the deeds should be set aside for this reason. This contention is not tenable. Where a deed is executed and delivered in blank, with parol authority to fill the blank with the name of the grantee, the grantee whose name is afterwards inserted takes a good title. [Otis v. Browning, 59 Mo. App. 326.] And this is true though the blank was filled in the absence of the grantor. [Field v. Stagg, 52 Mo. 534.]"

In 1 Ruling Case Law, section 58, page 1023, we find the following: "Accordingly if a married woman executes a mortgage in blank as to the description of the property and delivers it to her husband relying on his statement that it is to cover certain land belonging to him, and he inserts therein a description of their homestead, the mortgage is nevertheless binding on her; and where a wife executes a deed of her real estate, leaving the name of the grantee, the amount of consideration, and the date blank, and delivers such deed to her husband for the purpose of enabling him to sell and convey the real estate, such deed, duly filled up, in the hands of a *bona fide* grantee who purchased the land from the husband and paid the consideration therefor, will be sustained." [See, also, Thummel v. Holden, 149 Mo. 677, 51 S. W. 404.]

If plaintiff were permitted to have the deed set aside in this case, many titles to real estate would be in a precarious condition. No examiner of an abstract would be safe in informing his client that he had good title. The widow of a grantor of the title could come into court and say: I signed the deed in blank; my husband asked me to do so because he was selling the property, but I never acknowledged the deed; the property was sold to the wrong party, and my husband sold it for more than the consideration mentioned in the deed. Such a rule would play havoc with real estate titles. Under the authorities and established law this cannot be done.

Respondent in her brief contends that the deed in this case was void because signed in blank. The authorities cited in support of this contention hold that a deed signed and *delivered* with none of the blanks filled is void. [See 18 C. J. 188, sec. 77.] The deed in this case was not *delivered* in blank. In the case of Samuel v. Frederick, 262 S. W. 713, cited by respondent, the deed had been forged. In

Thummel v. Holden, supra, the court quoted with approval the following from an earlier case:

"When a deed is executed and delivered in blank with the parol authority to fill the blank with the name of the grantee, the grantee whose name is afterward inserted takes a good title and this is true though the blank be filled in the absence of the grantor."

In 18 Corpus Juris, page 188, section 77, cited by respondent, we find the following:

"A deed executed in blank is, according to the great weight of authority, void. It has, however, been decided that a deed signed in blank but filled in when delivered is valid. . . ."

The judgment is therefore reversed and the cause remanded with directions to the trial court to dismiss plaintiff's suit. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.