**FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation, Plaintiff,**

v.

**Bernard A. FREUDENFELD, Defendant.**

No. 79–C–340.

United States District Court,
E. D. Wisconsin.

June 6, 1980.

**4.** *Id.*, ¶ 2.

Gregory G. Wille, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for plaintiff.

Craig Gordon Smith, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

In January of 1975, the defendant, Bernard A. Freudenfeld, applied to the American City Bank & Trust Company (American) for an Irrevocable Standby Letter of Credit up to an amount of $10,000.00 available by drafts drawn at sight. The application named the Miami National Bank (MNB) of Miami, Florida as beneficiary and specified that the requested letter of credit was to be for the account of James and Jill Weinberg d/b/a James Lee, Inc. The Weinbergs were seeking to borrow $10,-000.00 from the MNB and the letter of credit satisfied a requirement of the MNB. Under the agreement between Freudenfeld and American, Freudenfeld agreed to pay a fee for issuance of the letter of credit and to reimburse American the amount of any draft on the credit presented to American for payment. On January 23, 1975, American issued Irrevocable Standby Letter of Credit No. 1629 for a sum not exceeding $10,000.00 and for the account of the Weinbergs with the MNB as beneficiary. The stated sum was:

> Available by [a] draft at sight accompanied by the following documents:
>
> Beneficiary's signed certificate that loan to account party is past due for an amount in principal and interest equal to, or greater than amount claimed on attached sight draft.

On October 21, 1975, before the MNB drew on Letter of Credit No. 1629, American City Bank was declared insolvent by the Comptroller of the Currency and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver of American. Title to the asset represented by the agreement between Freudenfeld and Amer-

ican, and all liability under Letter of Credit No. 1629, passed to the FDIC. The FDIC, however, took the position that the Letter of Credit was still contingent at the time American was declared insolvent and that it could, therefore, avoid liability on the letter of credit. Pursuant to that posture, on October 28, 1975, the FDIC advised the MNB and the Weinbergs d/b/a James Lee, Inc. by letter that it was cancelling and terminating the Letter of Credit No. 1629 as of October 21, 1975.

Notwithstanding the October 28, 1975 letter from the FDIC, the MNB sent a sight draft for $10,000.00 with the appropriate required certificate attached showing that the loan by the MNB to James Lee, Inc. was past due in the amount of $10,000.00. These documents were received by the FDIC on November 28, 1975 and, consistent with its previously stated position, it refused to honor the draft of the MNB. Consequently, on May 18, 1977, the MNB commenced an action in this district against the FDIC, as receiver of American, to require funding of Letter of Credit No. 1629. This action was stayed by agreement of the parties because a case, *First Empire Bank— New York v. FDIC*, involving standby letter of credit issues substantially similar to those in the *MNB v. FDIC* case, was pending in the Southern District of California. The MNB and the FDIC agreed to abide by the judicial determination in the *First Empire* case. This agreement was never disclosed to defendant Freudenfeld.

On April 6, 1978, the Ninth Circuit Court of Appeals decided the *First Empire* case, 572 F.2d 1361 (9th Cir. 1978), holding that standby letters of credit still contingent at the time of the bank's closing cannot be avoided or terminated by the FDIC and, furthermore, that under a purchase and assumption agreement as used in the American closing, *i. e.*, whereby another bank assumes liabilities and purchases assets of the closed bank including commercial letters of credit, a standby letter of credit must be treated like commercial letters of credit and thus either be included in the purchase and assumption agreement or be paid in full by the FDIC. Mr. Freudenfeld

was advised of the MNB's lawsuit against the FDIC and of the decision of the Ninth Circuit Court of Appeals in the FDIC's letter of May 18, 1978. The letter advised defendant Freudenfeld that if the Supreme Court affirmed the Ninth Circuit and the FDIC was required to pay the MNB, the FDIC would look to Freudenfeld for reimbursement pursuant to Wis.Stat. § 405.-114(3). Subsequently, the FDIC sought and on October 16, 1978 was denied *certiorari* of the *First Empire* case in the Supreme Court. 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265. Consequently, on January 12, 1979, the FDIC paid $10,000.00 plus interest to the MNB and by letter of February 6, 1979, advised Freudenfeld of payment under the letter of credit and demanded reimbursement pursuant to the application agreement and section 405.114(3). Freudenfeld refused payment and the FDIC commenced this litigation.

In addition to these events leading to the commencement of this litigation by the FDIC, certain actions were taken by the MNB with respect to its loan with the Weinbergs. Later in 1975, September 22, 1975, the MNB loaned an additional $13,-000.00 to James Lee, Inc., as borrower with Jill Weinberg nee Freudenfeld as guarantor. In October of 1975, James Lee, Inc. defaulted on the $10,000.00 note and, notwithstanding the FDIC's notice of cancellation, the MNB perfected its interest in the standby Letter of Credit. Thereafter, the MNB commenced its action against the FDIC in May of 1977, but Freudenfeld was not advised of this lawsuit or the settlement agreement.

At about the same time the MNB commenced its action against the FDIC, it also filed an action against James and Jill Weinberg in a Florida circuit court to recover on both the $10,000.00 and $13,000.00 loans. Subsequently, the Weinbergs were divorced and James filed for personal bankruptcy. On her own behalf, Jill Weinberg negotiated a stipulation of dismissal of the Florida action in consideration of which she paid the MNB $1,500.00. Because Jill Weinberg lacked the money, Mr. Freudenfeld supplied

the $1,500.00 necessary for the settlement agreement.

According to defendant, he first learned of the action by the MNB against the FDIC on May 18, 1978 when he received the FDIC's explanatory letter. On that same day, he made the last payment under his daughter's settlement agreement with the MNB. However, it was not until July 13, 1978, that the MNB drafted a release and caused the stipulation of dismissal to be filed in the Florida court resulting in the entry of a judgment of dismissal. The release dated July 13, 1980 provides that the $1,499.00 satisfies Jill Weinberg's obligation for the $13,000.00 debit of James Lee, Inc. to the MNB and $1.00 releases her duty on the $10,000.00 loan. The agreement further provides:

> Nothing herein shall in any way effect, discharge, waive or disclaim the rights, claims and actions of the [MNB] as against any other guarantors, sureties, indemnities or the maker of the aforementioned promissory notes.

■ Based upon the foregoing facts, the FDIC claims that it is entitled to summary judgment. Under Rule 56(c) of the Federal Rules of Civil Procedure, such relief is warranted if the pleadings, affidavits and other documents on file indicate that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. See *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In the present case, the Court has the benefit of both parties' affidavits. There is no apparent disagreement on numerous facts and thus the question for this Court is whether the undisputed facts support summary judgment for the FDIC.

In reviewing this matter, the Court is somewhat perplexed. In his answer, defendant Freudenfeld asserts numerous defenses, but in his opposition brief relies almost entirely upon the equities of the FDIC's actions. In any event, in the interest of caution, each defense in Freudenfeld's answer will be addressed.

At the outset, it is important to note that Freudenfeld admits execution of the agreement, issuance of the Letter of Credit, payment by the FDIC of $10,000.00 to MNB, and non-payment of the FDIC's demand for repayment. Furthermore, the record is clear that as the applicant for the letter of credit, and pursuant to paragraph 5 of the agreement and Wis.Stat. § 405.114(3), Freudenfeld is obliged to reimburse the FDIC, unless his defenses and the purported supporting facts present a valid issue for trial.

■ The first defense raised by Freudenfeld is that the standby Letter of Credit was a guaranty contrary to the authority of the American City Bank as a national banking association. In order to establish this defense, the FDIC asserts that Freudenfeld must prove three points: 1) that a national bank does not have authority to make a guaranty; 2) that a standby letter of credit should be characterized as a guaranty; and 3) that if American's issuance of the letter of credit was *ultra vires*, that Freudenfeld is entitled to assert the lack of authority in order to avoid his liability to reimburse the FDIC which disbursed the funds under the terms of the Letter of Credit. The Court agrees that these are the points defendant must establish and holds that, as a matter of law, Freudenfeld cannot establish two of them.

The FDIC, citing 12 U.S.C. § 24, concedes that a national bank lacks authority to make a guaranty. However, based upon the court's holding in *Prudential Insurance Co. v. Marquette National Bank of Minneapolis*, 419 F.Supp. 734, 735–36 (D.Minn. 1976), and the court's comments in *First Empire Bank—New York v. FDIC*, 572 F.2d 1361, 1366–67 (9th Cir. 1978), the FDIC argues that a "standby" letter of credit is not a guaranty.

Furthermore, it argues that only the United States, which has chosen to regulate the affairs of national banks, and not a private individual, can challenge a national bank action as being *ultra vires*.

■ Although in the *Prudential* case the court did not undertake extensive reason-

ing, the opinion is rational and will be followed here. A standby letter of credit is simply not a guaranty even though it has some of the same characteristics.

■ Even if the Letter of Credit was, however, a guaranty, only the United States can challenge a national bank's actions as *ultra vires*. *Thompson v. St. Nicholas National Bank*, 146 U.S. 240, 251, 13 S.Ct. 66, 69, 36 L.Ed. 956 (1892). In *Thompson* the Court held:

> It has been held repeatedly by this court that where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States and not by private parties. *Id.*

Since only the federal government can challenge the actions of American, defendant Freudenfeld will not be permitted to challenge the bank's actions. To do so would clearly work an injustice. The Letter of Credit was issued at Freudenfeld's behest and he benefited from it because the MNB loaned funds to the account party designated by defendant in the Letter of Credit. The FDIC, by force of law, rightfully paid the MNB under the Letter of Credit, and to deny it recovery from Freudenfeld on the *ultra vires* ground, would be unfair.

■ The second affirmative defense raised by Freudenfeld is that the FDIC should not have funded the standby Letter of Credit, and thus should not be seeking reimbursement, because the letter of credit was purchased and assumed by the Marine Bank. This defense is refuted by the affidavit of Mr. Gordon Haberman, an FDIC employee, who states that this item was not purchased or assumed by the Marine Bank. Mr. Haberman's statement is substantiated by the purchase and assumption agreement which excludes standby letters of credit which were still contingent as of the date of closing. (¶ 2.1(c) and (f) of Exhibit B attached to the Haberman Affidavit). Although obligated to do so under Rule 56(e) of the Federal Rules of Civil Procedure,

defendant Freudenfeld has offered no facts to support his claim that Marine assumed Letter of Credit No. 1629.

This Court can only conclude that the FDIC was the party responsible for payment on the Letter of Credit. Having made payment, the FDIC is the proper party to seek reimbursement.

Turning now to defendant's third and fourth affirmative defenses, in which he alleges that the FDIC's payment to the MNB constituted a violation of its obligation to distribute assets ratably, the Court notes that the FDIC asserts two grounds to show the deficiency of these defenses.

First, the FDIC argues that rather than preferring one creditor over another, it was following the dictates of *First Empire, supra*. The court held that since commercial letters of credit and other non-contingent liabilities are assumed in full by another bank, in order to avoid a preference of these assets over the contingent standby letters of credit, the contingent obligations must also receive full payment. 572 F.2d at 1371. The FDIC argues that it fulfilled its obligation to distribute funds ratably by paying the MNB in full, and that it paid in full because of the mandate of *First Empire*. As a second reason, the FDIC, citing this Court's opinion in *FDIC v. Lesselyoung*, 476 F.Supp. 938, 946 (E.D.Wis.1979), asserts that even if its distribution to the MNB was not ratable, a debtor such as Freudenfeld has no standing to challenge full payment by the FDIC.

■ Quite clearly the FDIC's payment in full to the MNB is in accordance with the court's opinion in *First Empire, supra*. In this Court's opinion, the *First Empire* holding is correct and thus by force of law, the FDIC cannot prefer one creditor over another. Accordingly, it has not preferred the MNB over other creditors. However, even if it had, this Court will again reiterate the position taken in *FDIC v. Lesselyoung*, 476 F.Supp. at 946. Debtors have no standing to challenge non-ratable distributions of assets in a bank receivership. Therefore, the affirmative defenses based upon an alleged

non-ratable distribution are legally deficient.

Defendant Freudenfeld's fifth and sixth affirmative defenses, where he alleges that the claim of the MNB was contingent in November, 1975, that it was therefore not provable and consequently that the FDIC volunteered payment, are deficient. If the FDIC was liable for payment under Letter of Credit No. 1629, then it was not a volunteer when it made payment to the MNB. The court in *First Empire* quite clearly held that the FDIC is obligated to pay matured debts, even though the liabilities were contingent at the time the failed issuing bank was declared insolvent. Although this Court is not bound, it will follow the holding in *First Empire, supra,* and, therefore, must conclude that the FDIC was legally obliged to pay the MNB under the terms of Letter of Credit No. 1629 and hence was not a volunteer. Accordingly, defendant Freudenfeld's fifth and sixth affirmative defenses lend him no aid in opposing summary judgment.

The seventh affirmative defense asserted by defendant Freudenfeld is also deficient. In that defense, Freudenfeld alleges that the standby Letter of Credit "was in fact an unenforceable guarantee cancelled by plaintiff on or about the 3rd day of November, 1975 . . . ." As this Court held earlier, the Letter of Credit at issue is not a guaranty and thus is enforceable. *See Prudential Insurance Company of America v. Marquette National Bank of Minneapolis, supra.* Nevertheless, the question presented by the seventh affirmative defense is whether the notice or cancellation somehow estopped the FDIC from recovering since it had no authority to unilaterally cancel the Letter of Credit.

■■■ Apparently, defendant Freudenfeld alleges the defense of equitable estoppel. Under Wisconsin law, there are three elements to such a defense: 1) action or inaction which induces 2) reliance by another 3) to his detriment. *Mercado v. Mitchell,* 83 Wis.2d 17, 26–27, 264 N.W.2d 532 (1978). The action or inaction relied upon can only cause estoppel if the reliance was justified and reasonable. *Kohlenberg v. American Plumbing Supply Co.,* 82 Wis.2d 384, 263 N.W.2d 496 (1978); *Grams v. Melrose-Mindoro Joint School Dist.,* 78 Wis.2d 569, 254 N.W.2d 730 (1977).

Defendant Freudenfeld argues that he relied upon the cancellation notice in agreeing to advance $1,500.00 to the MNB in settlement of the MNB's claims against Jill Weinberg. Defendant Freudenfeld, consequently, asserts that the notice of cancellation should estop the FDIC from now seeking reimbursement.

■■■ The defect in defendant Freudenfeld's position is that his reliance, if any, was clearly unreasonable. The FDIC cannot unilaterally cancel its obligations on a standby letter of credit. Absent a definitive judicial pronouncement or the acquiescence of the MNB, defendant Freudenfeld could not reasonably have relied upon the FDIC's purported cancellation. While defendant Freudenfeld may well have relied upon the statement of cancellation in his dealings with the MNB, such reliance does not estop the FDIC, because the reliance was not reasonable.

In the eighth and last affirmative defense, defendant Freudenfeld asserts an exhaustive laundry list of equitable defenses. In essence, defendant Freudenfeld claims that by its actions, the MNB breached its fiduciary duty to defendant Freudenfeld. Apparently, defendant asserts that somehow the breach of the MNB taints the FDIC's claim. Furthermore, he argues that the private settlement agreement between the FDIC and the MNB unfairly affected defendant's interests.

First, defendant Freudenfeld charges that the MNB placed his money at risk because it extended an additional $13,000.00 to James Lee, Inc. thereby increasing the likelihood that a default would occur. Furthermore, he argues that since it loaned $13,000.00 unsecured, the MNB did not need a $10,000.00 guaranty and Freudenfeld was misled into obtaining a Letter of Credit. Finally, he asserts that the FDIC had access to this information and presumably should have declined payment.

■ The claim that the FDIC should have declined payment because it knew of the purported breaches by the MNB is without merit. An issuer of a letter of credit is obligated to pay the beneficiary when the appropriate draft with supporting documents is presented. Wis.Stat. § 405.114(1). The FDIC was therefore legally bound to pay notwithstanding any breaches of duties involving the underlying letter of credit.

Notwithstanding the force of Wis.Stat. § 405.114(1), defendant Freudenfeld apparently goes on to argue that the FDIC should have presented its defense in the action brought by the MNB against it more forcefully. He claims that he relied upon the defense being asserted by the FDIC in settling with the MNB.

■ These arguments are unpersuasive. The FDIC properly followed the holding in the *First Empire* case in paying the Letter of Credit. As stated earlier, the court in *First Empire* reached the correct result in this Court's opinion. Furthermore, the reliance on the defense asserted by the FDIC was not reasonable and thus does not estop the FDIC because the defense had not been determined by any court. Defendant had no reason to believe that this defense had merit as a matter of law. Defendant Freudenfeld simply had no valid reason to believe that his obligations on the Letter of Credit were cancelled. The FDIC did nothing wrong in settling because the *First Empire* case is a clear statement of the law and the settlement caused no harm to the defendant in any event, because the FDIC in this Court's opinion was obliged to pay.

■ Next, defendant Freudenfeld asserts that the MNB acted wrongfully in releasing Jill Weinberg, but reserving rights against everyone else. Apparently, defendant argues that he could not have been induced to settle his daughter's claim for $1,500.00 unless he believed the claims of the MNB were settled once and for all. Assuming that defendant Freudenfeld was misled by the MNB into believing that the settlement settled all claims, this does not affect the FDIC's claim. First, the release clearly reserved its claims against all but

Mrs. Weinberg and the law is clear that a creditor can release a principal and reserve against sureties. *See* Restatement of Security § 122 (1941); 74 Am.Jur.2d, Suretyship, § 99 (1974). The Court turns to surety law because, in effect, the letter of credit had the practical effect of a surety and the law is logically applicable. As a result, the FDIC was obligated to pay notwithstanding the release. Again, any wrongdoing by the MNB, even if known to the FDIC, could not and did not release the FDIC from paying under the Letter of Credit. Wis.Stat. § 405.114(1). Consequently, the representations of the MNB are not available as a defense in the present action.

■ In light of the foregoing, the FDIC is entitled to summary judgment. It has shown that it properly paid on a standby Letter of Credit and it has shown that the defendant Freudenfeld's defenses are legally and factually meritless. The record clearly indicates that there is no genuine issue of fact and that the FDIC is entitled to judgment.

In granting summary judgment, the Court must determine whether to reduce the debt of defendant to the FDIC by the $1,500.00 paid to the MNB. If the $1,499.00 was or should have been applied to reduce the $10,000.00 debt, perhaps the claim of the FDIC should be reduced accordingly.

■ Quite clearly under the release given by the MNB, only one dollar was applied to the $10,000.00 debt, since $1,499.00 was applied to the $13,000.00 debt. Furthermore, a creditor can, absent a clear direction otherwise, apply a payment from a debtor to any debt he chooses to maximize his security. *See* 60 Am.Jur.2d, Payment, § 83 (1972). Consequently, only one dollar, if anything, could be reduced from the debt owing by the defendant to the FDIC. However, since this amount is clearly *de minimus*, the Court will not determine whether the debt should be reduced.

In summary, the FDIC's motion for summary judgment must be and hereby is granted.

SO ORDERED.