**Doretha BRYANT, Respondent,**

v.

**Preston KERR, et al., Appellants.**

**No. WD 37906.**

Missouri Court of Appeals,
Western District.

Jan. 20, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1987.

Application to Transfer Denied
April 14, 1987.

David R. Schlee, Michele A. Bonhag, Charles W. Gordon, Jr., Kansas City, for appellants.

Dennis E. Egan, Kansas City, for respondent.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

PER CURIAM.

Defendants, Arthur Bryant's Inc., (ABI), and Preston Kerr, appeal from the trial court's grant of summary judgment in favor of plaintiff, Doretha Bryant, on her declaratory judgment action alleging that a "License Agreement" entered into by the parties has been involuntarily terminated by the terms of the agreement. This court reverses.

On March 7, 1984, Doretha Bryant, acting personally and as the personal representative for the estate of Arthur Bryant, entered into a License Agreement with defendants in which Doretha Bryant conveyed to defendants the exclusive right to use the trade names/service marks of "Arthur Bryant" and "Bryant's," as well as the right to the formula for the barbeque sauce used at the restaurant. Defendants were also granted rights to franchise Arthur Bryant's restaurants and to market Arthur Bryant's barbeque sauce on a national basis. In consideration for the exclusive license, Doretha Bryant was to receive 5% of the ABI stock; 5% of the net amount of all initial franchise fees; $1000 per restaurant for each restaurant opened under the agreement; a 2% royalty on the gross sales of the barbeque sauce; and $30,000 annually for life paid on March 1, of each year; however, in no event shall the $30,-000 be paid for less than fifteen years.

As security to insure the payment of the annual $30,000 ABI was to secure a letter of credit in the amount of $100,000. ABI also agreed that on January 10, of each year, it "will send to Bryant written notice stating whether the Letter of Credit has been renewed upon substantially the same terms by Republic Bank of Kansas City, N.A. ("Republic") or issued by a state chartered bank or national banking association with capital and surplus equal to that of Republic on the date of the Letter of Credit upon substantially the same terms."

Pursuant to the agreement, ABI purchased an irrevocable standby letter of credit[1] from Republic Bank of Kansas City in the account of ABI. The letter of credit was secured by a promissory note, payable on demand, which in turn was secured by a pledge of all ABI's stock, accounts receivable, inventory, furniture, fixtures, machinery and equipment as well as an assignment to ABI's rights in the License Agreement.

On March 7, 1984, ABI placed Doretha Bryant's first annual payment of $30,000 in an escrow account which would be released upon the final decree of distribution of Arthur Bryant's estate.[2]

On June 25, 1984, Doretha Bryant received a letter from the Federal Deposit Insurance Corporation (FDIC) stating that the Republic Bank had been declared insolvent and that, as "liquidator," it intended to disaffirm any obligation under the letter of credit which was issued for her benefit. The letter, in part, states:

On June 18, 1984, Republic Bank of Kansas City, Kansas City, Missouri, was declared insolvent by the State Division of Finance, and the FDIC was appointed as Liquidator (the "Liquidator"). Under the laws of the State of Missouri, the Liquidator is charged with the duty of winding-up the affairs of the Bank as expeditiously as possible. In order to achieve

---

**1.** Under a standby letter of credit, "payment is made conditional upon a default of the customer in the performance of an obligation owed to the beneficiary...." Anderson, Uniform Commercial Code, § 5–102:15 p. 249. In contrast, under a conventional or commercial letter, an insurer of the credit undertakes an independent, primary obligation to the beneficiary. *Id.*, § 5–102:14 p. 249.

**2.** The distribution of Arthur Bryant's probate estate was completed in January, 1985.

this goal, the Liquidator is given the legal right to disaffirm executory undertakings in which the Bank was involved. This right enables the Liquidator to fulfill its statutory obligation by allowing it to terminate ongoing business transactions to which the Bank was a party.

The Bank's records indicate that you may be a party to a letter of credit purportedly issued by the Bank on March 7, 1984, in the maximum amount of $100,000.00. It is the Liquidator's view that letters of credit are contractual obligations which are executory in nature; in other words, they set forth duties that a bank may have to perform in the event certain contingencies occur. The purpose of this letter is to inform you that the Liquidator has elected to disaffirm this letter of credit to the full extent, if any, that it represents an enforceable obligation of the Bank and the Liquidator as successor thereto.

On July 6, 1984, Doretha Bryant notified defendants that she had received the letter of disaffirmance from the FDIC and that she intended to exercise her option to terminate the License Agreement pursuant to paragraph 14(B)(3) of the agreement:

14. *Termination and Effect*

\* \* \* \* \* \*

(B) *Involuntary Termination.* This License Agreement and all rights, duties, and obligations of the parties hereunder shall terminate, at the option of Bryant, except to the extent otherwise provided for in this License Agreement, upon the occurrence of any one of the following events ("Involuntary Termination"):

\* \* \* \* \* \*

3. It is the intent of the parties that a letter of credit, substantially similar to Exhibit E attached hereto, be issued to Bryant throughout the entire term of this License Agreement. *Involuntary termination shall be deemed to occur if, at any time, such a letter of credit is not in full force and effect.* The provisions of this sub-paragraph 3 shall be

specifically exempted from the arbitration provisions of Section 24.

(Emphasis added).

Subsequently, Bryant filed on August 29, 1984, a petition for declaratory judgment and injunctive relief in which she sought to terminate the License Agreement and to prevent defendants' use and enjoyment of the licensed property; Bryant claimed the irrevocable letter of credit ceased "to be in full force and effect" as a result of the FDIC's disaffirmance, thus allowing her to terminate the License Agreement. Additionally, she sought an order from the court declaring that she was entitled to the $30,000 held in escrow with Centrerre Bank of Kansas City, N.A., and asked for a determination of whether defendants remain obligated to pay her the annual lifetime payment of $30,000.

After cross-motions for summary judgment were filed by the parties, the trial court found in favor of Bryant on the termination issue stating:

It is the court's opinion that the Letter of Credit issued by Republic Bank became null and void as a result of the disaffirmance by the Federal Deposit Insurance Corporation.

The court, however, found Bryant was not entitled to the $30,000 in escrow, or the lifetime payments of $30,000 because the other provisions of the agreement were made inoperative with the termination occurring prior to the closing of Arthur Bryant's probate estate—a condition precedent to the parties' obligations under the agreement. Bryant does not appeal from this finding.

Because the facts are undisputed and the parties seek only a declaration of the law, a summary judgment was an appropriate remedy in this case. *Packet Dairy v. Ziegler's Super Market,* 676 S.W.2d 926, 927 (Mo.App.1984). This court, however, contrary to the lower court, cannot similarly find the FDIC's disaffirmance renders the irrevocable letter of credit a nullity without "full force and effect."

■ Under § 361.365, RSMo 1986, the FDIC is granted the authority by the director of finance to act as a liquidating

agent for a closed insured bank and is "vested with both legal and equitable title to all the assets, rights, claims and other real and personal property of the ... bank." Once appointed liquidating agent, the FDIC then operates in two entirely separate and distinct capacities: (1) a supervising capacity as a receiver; and (2) a corporate capacity as a federal insurer of bank deposits. 12 U.S.C. § 1821(e); *Federal Deposit Insurance Corporation v. Summer Financial Corporation,* 602 F.2d 670, 679 (5th Cir.1979). As a receiver, the FDIC "stands in the shoes" of the bank and is afforded no special privileges or rights greater than those possessed by the bank with respect to its creditors. *Tosco Corporation v. Federal Deposit Insurance Corporation,* 723 F.2d 1242, 1247 (6th Cir.1983).

The letter of credit obtained by the defendants for the benefit of Doretha Bryant was an *irrevocable* standby letter of credit which, as agreed to by the parties, is governed by Article 5 of the Uniform Commercial Code as adopted by the State of Missouri. *See* Chapter 400.5, RSMo 1986. Under Missouri's code, unilateral modification or revocation of an irrevocable letter of credit is prohibited under § 400.5–106(2). This section specifically states:

> Unless otherwise agreed once an irrevocable credit is established as regards the customer *it can be modified or revoked only with the consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent.*

(Emphasis added.)

■ Nothing in the terms of the agreement or the letter of credit indicates the parties agreed to deviate from this code provision, and the credit was clearly "established" within the meaning of § 400.5–106(2) as to ABI (the customer) when the letter of credit was sent to Bryant and as to Bryant (the beneficiary) when she received it. V.A.M.S. § 400.5–106, comment 1. We also note that the letter of credit states the terms and conditions of the credit shall be binding upon the bank's "representatives, successors and assigns." Con-sequently, the FDIC could not disaffirm its obligations under the letter of credit without the consent of ABI and Ms. Bryant.

Bryant asserts this reasoning is defeated by *Federal Deposit Insurance Corporation v. Philadelphia Gear Corporation,* —— U.S. ——, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986), because it lends support to the proposition that FDIC is not required to honor standby letters of credit by an insured state bank which becomes insolvent. In *Philadelphia Gear, supra,* Orion Manufacturing Corporation secured a letter of credit from Penn Square Bank, N.A., for the benefit of Philadelphia Gear Corporation. The letter of credit was obtained to insure payment for goods sold by Philadelphia Gear to Orion; Penn Square would provide payment upon presentment of a signed statement that the invoices had remained unpaid for fifteen days. As security for the letter of credit, Orion executed an *unsecured promissory* note in favor of Penn Square due only if the bank was required to make good on the credit. Subsequently, Penn Square was declared insolvent and FDIC was appointed as receiver. When Philadelphia Gear presented the unpaid drafts for payment, the FDIC rejected the claim and the drafts were returned unpaid. The court held that the FDIC was not required to honor the letter of credit as an "insured deposit" to be paid from the FDIC's insurance fund. *FDIC v. Philadelphia Gear, supra,* 106 S.Ct. at 1939. The court spoke only in terms of the FDIC's role as an insurer and never reached the issue sub judice of whether FDIC, in its role as a liquidator, has the authority to disaffirm an irrevocable standby letter of credit.

In *First Empire Bank v. Federal Deposit Insurance Corporation,* 572 F.2d 1361 (9th Cir.1978), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978), the Court of Appeals discusses the issue directly. There, the United States National Bank of San Diego (USNB) was declared insolvent and the FDIC, in its dual role as receiver and insurer, arranged for Crocker National Bank to purchase selected assets of USNB, and to assume certain obligations, including deposits; to facilitate

this assumption agreement, the FDIC-insurer lent the FDIC-receiver an amount of money to balance out the difference between the purchased assets and liabilities. As security, the FDIC-insurer took a lien on the unacceptable, unpurchased assets. As to the unacceptable liabilities, specifically, standby letters of credit, the FDIC-receiver attempted to dishonor them. *Id.*, 572 F.2d at 1365. *The court held that, although contingent at the time of the bank closing, the standby letters of credit were provable claims against the receiver and could not be avoided by the FDIC. Id.*, at 1369.

Similarly, in *Federal Deposit Insurance Corporation v. Freundenfeld*, 492 F.Supp. 763, 769 (E.D.Wis.1980), the court found "[t]he FDIC cannot unilaterally cancel its obligations on a standby letter of credit." In this case, *Freundenfeld* made an agreement with a bank to issue an irrevocable standby letter of credit to secure loan payments. Before the beneficiary drew upon the letter of credit, the bank was declared insolvent and the FDIC was appointed as receiver. The FDIC advised the beneficiary it was cancelling the letter of credit reasoning that if the letter of credit was still contingent at the time the bank was declared insolvent, it could avoid its liability. Shortly afterwards, in spite of FDIC's cancellation, the beneficiary presented a draft of non-payment to the FDIC. The FDIC paid the letter of credit in light of the Ninth Circuit's opinion in *First Empire Bank v. Federal Deposit Insurance Corporation, supra,* but sought reimbursement from the customer. In defense, the customer argued FDIC's original position. The district court disagreed relying upon *First Empire Bank v. Federal Deposit Insurance Corporation, supra:* "Although this court is not bound, it will follow the holding in *First Empire, supra,* and, therefore, must conclude the FDIC was legally obliged to pay [the beneficiary] under the terms of the Letter of Credit...." *Id.* at 769. The court went further and stated that "[a]bsent a definite judicial pronouncement or the acquiescence of the

[the beneficiary], defendant Freudenfeld [the customer] could not reasonably have relied upon the FDIC's purported cancellation." *Id.*

■ As previously discussed, once the letter of credit was established in the case at bar, FDIC had no authority to unilaterally disaffirm the credit without the parties' consent. If ABI had defaulted on the $30,000 payment to Bryant after the closure of Republic Bank, Bryant would still possess the legal rights emanating from the letter of credit which would be enforceable against the bank and its successors and assigns. The practicalities of collection, in light of *Federal Deposit Insurance Corporation v. Philadelphia Gear Corporation, supra,* is not at issue here; whether the letter of credit is in "full force and effect" tests only the enforceability of the legal rights. A claim that has been proven is one that is owing whether it can be satisfied or not. In that situation Bryant could potentially receive the distributions from the liquidation of the bank's assets. The FDIC's disaffirmance did not strip away Bryant's legal rights of enforcement.

■ Bryant attempts to undercut any reliance on *First Empire, supra,* and *Freundenfeld, supra,* arguing the cases are distinguishable because, unlike to the customers in the above cases, ABI never defaulted on their obligation before Republic's insolvency and the payment on the credit remained conditional; no claim had ever been made by Bryant against Republic on the letter of credit. In *Freundenfeld, supra,* 492 F.Supp. at 769, the court relying on *First Empire,* stated that although the standby letters of credit are still contingent at the time the failed issuing bank was declared insolvent, the FDIC remained obligated on the letters. Moreover, the potential default of ABI could not possibly take place until the following March 1, when the first annual payment became due,[3] and it is noted that on January 10, prior to that payment, ABI must notify Bryant if Republic has renewed the letter of credit or if *another state chartered or national bank association will issue a letter of credit*

---

3. Actually, the first payment was made on March 7, 1984, and was held in escrow.

*substantially on the same terms.* If defendants fail to take action to replace the letter of credit then a breach of contract action may lie aside from liability under the letter of credit.

In sum, we find the irrevocable letter of credit remained in "full force and effect" and Bryant had no authority to terminate the "License Agreement" under paragraph 14(B)(3) of the contract. Therefore, the circuit court's order granting Bryant's motion for summary judgment is reversed. The case is remanded with directions to enter judgment in favor of defendants.