**Wilford THORNBURY and Ruby Thornbury, Plaintiffs,**

v.

**MORRIS OIL COMPANY, INC., Defendant–Respondent,**

and

**Metropolitan National Bank, Defendant–Appellant.**

No. 18005.

Missouri Court of Appeals, Southern District, Division One.

Jan. 28, 1993.

D. Patrick Sweeney, Hall, Ansley, Carmichael & Gardner, Springfield, for defendant-appellant.

C. Ronald Baird, Mark J. Millsap, Dorr, Baird and Lightner, P.C., Springfield, for defendant-respondent.

CROW, Presiding Judge.

The trial court entered summary judgment, Rule 74.04,[1] for $30,000 plus interest in favor of Morris Oil Company, Inc. ("Morris Oil") and against Metropolitan National Bank ("Metropolitan") on a letter of credit. Metropolitan appeals, insisting the letter is invalid because it was never "issued." A narrative of the unique facts is essential in addressing the legal issues.

Because the trial court heard no evidence, we glean the facts from the pleadings, depositions, and affidavits presented to the trial court, supplemented by the facts agreed on by Metropolitan and Morris Oil in their respective briefs.[2] In marshaling the facts, we are mindful we must scrutinize the record in the light most favorable to Metropolitan, the party against whom judgment was entered. *Cavin v. Kasser*, 820 S.W.2d 647, 649[1] (Mo. App.1991); *Barnes v. City of Lawson*, 820 S.W.2d 598, 599[1] (Mo.App.1991); *Missouri Board for Architects, Professional Engineers and Land Surveyors v. Earth Resources Engineering, Inc.*, 820 S.W.2d 505, 507[3] (Mo.App.1991).

---

1. Rule references are to Missouri Rules of Civil Procedure (1992).

2. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *O.S.G. by L.G. v. G.B., Jr.*, 805 S.W.2d 704, 705[1] n. 3 (Mo.App.1991).

As its name suggests, Metropolitan is a bank chartered under the laws of the United States. Morris Oil, a Missouri corporation, is a distributor of petroleum products.

In July, 1988, Larry Thornbury and his wife, Roberta, were operating a business, Thornbury's So–Lo Service Station. They negotiated with Morris Oil for it to supply petroleum products to them, on credit, for sale at retail. Morris Oil agreed, provided the Thornburys furnished a $30,000 letter of credit.

About August 16, 1988, Plaintiffs, Wilford Thornbury and Ruby Thornbury, parents of Larry Thornbury, signed a $30,000 note to Metropolitan, together with certain deeds of trust securing the note. The purpose of these documents was to provide security for Metropolitan for a $30,000 letter of credit to be issued by it to Morris Oil for the account of Larry and Roberta Thornbury. The note and deeds of trust were prepared for the signatures of not only Plaintiffs, but also those of Larry and Roberta. Larry, like his parents, signed all the documents, but Roberta signed none of them.

Nonetheless, William P. Maddy, an employee of Metropolitan authorized to sign letters of credit on its behalf, signed the following instrument:

IRREVOCABLE LETTER OF
CREDIT NO. 1202

Date: August 16, 1988
Springfield, Missouri

U.S. Dollars

Amount $30,000.00

To: Morris Oil Co.

  Attn: Jerry Carroll

  500 N. National, Springfield, MO 65802

RE: Larry W. & Roberta L. Thornbury AND

  Wilford & Ruby Thornbury

  4139 Tilden, Springfield, MO 65802

Gentlemen:

At the request of Larry W. & Roberta L. Thornbury AND Wilford & Ruby Thornbury and for the account of Thornbury's So–Lo Service Station, we hereby establish our irrevocable letter of credit in favor of Morris Oil Company for the account indicated above, for sums not exceeding $30,000.00, drawn at sight.

This irrevocable letter of credit covers all charges for services originated from or charges billed to the above indicated account from August 16, 1988.

Drafts drawn under this letter of credit must be accompanied by your statement for services. Each draft drawn relative hereto must be marked: "Drawn Against Irrevocable Letter of Credit No. 1202."

We hereby agree to honor each draft drawn under and in compliance with the terms of this credit, if duly presented (together with the document herein specified) on or before: August 16, 1989.

METROPOLITAN NATIONAL
BANK

BY: s/ William P. Maddy
    William P. Maddy

Title: _____

Approximately a year later, about August 15, 1989, Morris Oil presented Metropolitan a $30,000 draft signed by Jerry Carroll, vice president of Morris Oil, against the above letter of credit. The draft was accompanied by (1) a photocopy of the letter, and (2) unpaid bills for petroleum products delivered by Morris Oil to Thornbury's So–Lo Service Station.

Banker Maddy noted the documents appeared to be "in proper form." He told Carroll and John DeWeese, a Morris Oil employee, "it looked like a legitimate letter of credit." However, Maddy wanted to review the matter with Metropolitan's president. Maddy informed Carroll and DeWeese they "could come back [later] and get their check."

The next day, August 16, 1989, Plaintiffs commenced this action by suing Metropolitan and Morris Oil. Although a copy of Plaintiffs' petition is not in the record,[3] we

---

**3.** Plaintiffs filed a "Second Amended Application for Preliminary Injunction" on September 11, 1989. A copy of it is in the record.

are told by the briefs that it sought injunctive relief barring Metropolitan from honoring the letter of credit and Morris Oil's draft.

Metropolitan filed a cross-claim for declaratory judgment against Morris Oil, averring Metropolitan never delivered the "original" letter of credit to Morris Oil. The cross-claim pled Metropolitan "still retains the original in its file," and inasmuch as Roberta Thornbury failed to sign the note, deeds of trust and "other loan documents," Metropolitan never "issued or established" the letter of credit. The cross-claim prayed the trial court to determine, among other issues, whether Metropolitan was obliged to honor Morris Oil's $30,000 draft.

Morris Oil filed a five-count first amended cross-claim against Metropolitan. Count I—the only count involved in this appeal—prayed for judgment against Metropolitan for $30,000 plus interest from the date Morris Oil presented the draft to Metropolitan.

Morris Oil moved for summary judgment against Metropolitan. Metropolitan moved for summary judgment against Morris Oil. Pertinent to these motions, the record yields the following additional facts.

Metropolitan never mailed or otherwise delivered the original letter of credit to Morris Oil. The original letter remains in Metropolitan's "closed files." However, vice president Carroll of Morris Oil received, by mail, a photocopy of the letter of credit about August 17, 1988. The identity of the mailer is unrevealed.

Before receiving the photocopy, Morris Oil sold Larry and Roberta Thornbury petroleum products on a "cash only" basis. After receiving the photocopy, Morris Oil allowed Larry and Roberta to buy petroleum products on credit. During the latter part of 1988 and early 1989, Larry and Roberta became delinquent in payment of their account with Morris Oil. Inferably, the delinquencies exceeded $30,000 when Morris Oil presented the draft to Metropolitan.

On January 7, 1992, the trial court entered judgment on Count I of Morris Oil's first amended cross-claim against Metropolitan, and on Metropolitan's cross-claim against Morris Oil. The trial court found, *inter alia:*

. . . .

3. The photocopy of ... Letter of Credit No. 1202 ... is a duplicate original of the letter of credit and is a valid, issued and established letter of credit and was executed by the appropriate bank official;

4. The letter of credit was received in the United States Mail by ... Morris [Oil];

. . . .

6. The terms and conditions of the letter of credit were fulfilled by ... Morris [Oil];

7. ... Metropolitan has failed and refused, and continues to fail and refuse, to pay the sight draft drawn against ... Letter of Credit No. 1202; and

8. ... Morris [Oil] is entitled to damages ... of Thirty Thousand Dollars ... together with interest at the legal rate of nine percent ... from the date of demand of August 15, 1989, and for its costs incurred as to Count I of [its] First Amended Cross–Claim against ... Metropolitan.

In addition to awarding Morris Oil the money judgment on Count I of its first amended cross-claim against Metropolitan, the trial court ruled in favor of Morris Oil and against Metropolitan on the latter's cross-claim against Morris Oil, declaring the letter of credit must be honored by Metropolitan. The judgment further provided: "[T]he court designates and certifies the ... judgment as to Count I of ... [Morris Oil's] First Amended Cross–Claim against ... Metropolitan to be final for purposes of appeal and finds that there is no just reason for delay in granting a final judgment as to the letter of credit ... on Count I of ... [the] First Amended Cross–Claim." *See:* Rule 74.01(b).

This appeal followed.

Metropolitan's brief presents one point relied on, which reads:

The trial court erred in granting summary judgment for ... Morris [Oil] and against ... Metropolitan on Count I of the first amended cross-claim of ... Morris [Oil] in which the court found that the photocopy of the Irrevocable Letter of Credit No. 1202 was a valid, issued and established letter of credit because:

(A) The trial court deemed the photocopy a "duplicate original" in that such term is not applicable in the law of commercial transactions, but in the rules of evidence.

(B) The plain language of Article 5 of the Uniform Commercial Code indicates that the original letter of credit must be received by the beneficiary to be a valid, issued and established letter of credit.

(C) The banking customs and usage of trade set forth standards mandating that the original letter of credit must be received by the beneficiary to be a valid, issued and established letter of credit.

Missouri's version of the Uniform Commercial Code ("UCC") is chapter 400, RSMo 1986, as amended. Article 5 of the UCC is designated: "Uniform Commercial Code— Letters of Credit." Section 400.5–103, a part of Article 5, reads:

(1) In this article unless the context otherwise requires

(a) **"Credit" or "letter of credit"** means an engagement by a bank ... made at the request of a customer ... that the issuer will honor drafts ... upon compliance with the conditions specified in the credit. A credit may be ... irrevocable....

....

(c) An **"issuer"** is a bank ... issuing a credit.

(d) A **"beneficiary"** of a credit is a person who is entitled under its terms to draw or demand payment.

....

(g) A **"customer"** is a ... person who causes an issuer to issue a credit....

....

Section 400.5–106, another part of Article 5, reads:

(1) Unless otherwise agreed a credit is established

....

(b) as regards the beneficiary when he receives a letter of credit or an authorized written advice of its issuance.

(2) Unless otherwise agreed once an irrevocable credit ... is established as regards the beneficiary it can be modified or revoked only with his consent.

....

We first consider subparagraph "(B)" of Metropolitan's point, which proclaims a letter of credit becomes valid, as between the issuer and the beneficiary, only when the beneficiary receives the "original." [4] Inasmuch as Morris Oil never received the original, Metropolitan insists the letter of credit was never "issued and established." In support of this hypothesis, Metropolitan cites *Bryant v. Kerr*, 726 S.W.2d 373 (Mo. App.1987), and *Amoco Oil Company v. First Bank and Trust Company*, 759 S.W.2d 877 (Mo.App.1988).

In *Bryant*, the Western District of this Court held a letter of credit was "established" within the meaning of § 400.5–106, as between the issuer and the beneficiary, when the beneficiary received it. 726 S.W.2d at 376[2]. In *Amoco*, the Eastern District of this Court, applying Illinois' version of the UCC, held a credit was established between the issuer and the beneficiary when the beneficiary received the letter of credit. 759 S.W.2d at 878–79.

We agree with *Bryant* and *Amoco*. Furthermore, for the purpose of this appeal we assume (without deciding) that Metropolitan is correct in its assertion that when banks issue letters of credit, the custom is that the original is sent to the beneficiary— either directly or to the customer for delivery by him to the beneficiary. However, we are unconvinced that is the only way a credit can be established.

**4.** It is clear the term "original" used by Metropolitan means the sheet of paper on which Irrevocable Letter of Credit No. 1202 was typed and to which banker Maddy pressed a pen and subscribed his name. Henceforth in this opinion, we assign that meaning to "original."

Section 400.5–106(1)(b), quoted earlier, states unless otherwise agreed a credit is established as regards the beneficiary when he receives a letter of credit *or an authorized written advice of its issuance.* Obviously, an "authorized written advice of its issuance" is something other than the letter of credit itself; otherwise, § 400.5–106(1)(b) would end with the phrase "... when he receives a letter of credit." We are cited to nothing in Article 5 of Missouri's UCC suggesting a photocopy of a letter of credit cannot constitute "written advice of its issuance."

Here, during the negotiations between Morris Oil and the Thornburys, Larry Thornbury told vice president Carroll of Morris Oil that the $30,000 letter of credit demanded of the Thornburys by Morris Oil would be obtained from Metropolitan. Consequently, when Carroll received the photocopy of the letter of credit, it bore the name of the bank Carroll expected. Had Metropolitan authorized one of its employees or the Thornburys to mail the photocopy to Morris Oil, we would hold the photocopy constituted "authorized written advice of [the credit's] issuance" within the meaning of § 400.5–106(1)(b). Indeed, what better "written advice" could there be than a photocopy identical to the original in all respects?

However, as observed in the second paragraph of this opinion, we must view the record in the light most favorable to Metropolitan. Therefore, we must assume Metropolitan did not authorize anyone to mail, or otherwise deliver, the photocopy to Morris Oil. Consequently, while the photocopy constituted "written advice" of the issuance of the credit, the photocopy was not *"authorized* written advice." Does this mean Metropolitan prevails on subparagraph "(B)" of its point? We say no.

In *Edmonson v. Waterston,* 342 Mo. 1082, 119 S.W.2d 318, 320[3] (1938), the Supreme Court of Missouri held: "It is a well-known principle of law that where one of two innocent parties must suffer, the one whose negligence permitted the infliction of the injury should bear the loss." The intricate facts of *Edmonson* need not

be recounted in their entirety. Basically, the case involved a deed which, according to the grantor, she signed in blank at the instance of her husband. Using it, he sold the land to innocent purchasers. Later the wife sued the purchasers, seeking to set the deed aside. She claimed she signed it because of false representations by her husband (since deceased). The Supreme Court of Missouri reversed a decree for the grantor, emphasizing it was her carelessness that enabled her husband to transfer the property to the purchasers. *Id.* at 321.

Here, Metropolitan asserts that because Roberta Thornbury never signed the papers her husband and his parents signed, Metropolitan kept the original letter of credit in its files "with no intention of engaging in a credit transaction." Assuming that was Metropolitan's intent (as we must), it is nonetheless obvious Morris Oil could have never relied on the photocopy had banker Maddy simply postponed signing the original until Roberta Thornbury autographed the documents Metropolitan required. Once Maddy signed the original, the possibility arose that a photocopy could find its way to Morris Oil. Sadly for Metropolitan, that possibility eventuated.

Section 400.1–103, a part of the Missouri UCC, reads:

> Unless displaced by the particular provisions of this chapter, the principles of law and equity, including ... the law relative to ... estoppel ... shall supplement its provisions.

The rule in *Edmonson,* 119 S.W.2d at 320[3]—i.e., where one of two innocent parties must suffer by reason of the acts of a third, the party whose act enabled the third party to bring about the loss must bear it if the other party acted in good faith and without knowledge of the facts—has been applied by Missouri courts under the doctrine of estoppel. *Van Hooser v. Banks,* 816 S.W.2d 25, 27–29 (Mo.App.1991); *Pashalian v. Big–4 Chevrolet Co.,* 348 S.W.2d 628, 634[7] (Mo.App.1961); *Seward v. Evrard,* 240 Mo.App. 893, 222 S.W.2d 509, 513[2] (1949).

We hold the extraordinary facts of the instant case bring it within § 400.1–103

(quoted above), and call for application of the doctrine of estoppel set forth in the preceding paragraph. Accordingly, we hold Metropolitan is estopped to assert the photocopy of the letter of credit received by Morris Oil was unauthorized. Metropolitan and Morris Oil are both innocent parties; however, Morris Oil could have never relied on the photocopy had Metropolitan's employee, Maddy, delayed signing the original until Metropolitan was ready to issue it. Although the identity of the person who mailed the photocopy to Morris Oil remains a mystery, nothing in the record suggests—and Metropolitan does not imply—Morris Oil had any role in the mailing.

Because (a) the photocopy constituted "written advice" of the issuance of the credit, and (b) Metropolitan is barred from claiming the photocopy was unauthorized, we hold the credit was established per § 400.5–106(1)(b), quoted *supra*. It follows that subparagraph "(B)" of Metropolitan's point relied on presents no basis for reversal.

Subparagraph "(C)" of Metropolitan's point avers "banking customs and usage of trade" mandate the original letter of credit must be received by the beneficiary in order to establish the credit. Metropolitan presented the trial court affidavits of bankers stating this is the "usual banking custom and practice." In opposition, Morris Oil filed an affidavit of a banker stating he knew of no trade or custom in the banking industry requiring a beneficiary to have the original letter of credit in his possession for the credit to be established and considered valid.

If adjudication of Count I of Morris Oil's first amended cross-claim against Metropolitan required resolution of this issue, summary judgment for Morris Oil could not be upheld. Summary judgment may be affirmed only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *International Minerals & Chemical Corp. v. Avon Products, Inc.*, 817 S.W.2d 903, 906–07[3] (Mo. banc 1991). However, Count I of Morris Oil's first amended cross-claim against Metropolitan does not hinge on usual banking custom and practice.

▆ As noted in our consideration of subparagraph "(B)" of Metropolitan's point, § 400.5–106(1)(b) provides that unless otherwise agreed a credit is established as regards the beneficiary when he receives a letter of credit *or an authorized written advice of its issuance.* This statute clearly allows establishment of a credit by a *method* other than delivery of the original letter of credit to the beneficiary. Consequently, even if delivery of the original to the beneficiary is the usual banking custom and practice, it is not the only way a credit can be established under the Missouri UCC. To adopt Metropolitan's contention would, in the words of *State ex rel. Turco Development Co. v. Lasky*, 581 S.W.2d 935, 938 (Mo.App.1979), "improperly trammel the free flow of commerce intended by the [UCC] relating to letters of credit." Subparagraph "(C)" of Metropolitan's point is without merit.

Subparagraph "(A)" of Metropolitan's point is likewise futile. It asserts the trial court erred in characterizing the photocopy of the letter of credit received by Morris Oil a "duplicate original." Metropolitan's theory, as we divine it from the argument portion of its brief, is that the trial court equated delivery of the "duplicate original" with delivery of the original for the purpose of establishing the credit. This was error, says Metropolitan, in that the UCC does not permit establishment of a credit by delivery to the beneficiary of a duplicate original of a letter of credit, but only by delivery of the original. Furthermore, argues Metropolitan, it did not intend the photocopy "to have the same effect as the original."

Metropolitan's argument, as we grasp it, is based on the portion of § 400.5–106(1)(b) which says a credit is established as regards the beneficiary "when he receives a letter of credit."

In addressing subparagraphs "(B)" and "(C)" of Metropolitan's point, we did not invoke that portion of § 400.5–106(1)(b), but instead the alternative proviso which says a credit is established as regards the

beneficiary when he receives "an authorized written advice of its issuance." Accordingly, we need not decide whether Metropolitan's contention about the "duplicate original" in subparagraph "(A)" of its point is sound. That determination can await a case where it is essential to the outcome.

The trial court was right in entering judgment for Morris Oil on Count I of its first amended cross-claim against Metropolitan. We are unconcerned about the trial court's reasoning. Even if it be incorrect or insufficient—we do not imply it is—the result is correct, hence we affirm. *Producers Produce Co. v. Industrial Commission*, 365 Mo. 996, 291 S.W.2d 166, 170[1] (banc 1956).

The judgment for Morris Oil on Count I of its first amended cross-claim against Metropolitan is affirmed.

PARRISH, C.J., and SHRUM, J., concur.